# UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

ANTHONY A. COOPER,                )
                                       )

     Petitioner,              )
                                       )

v.                                )     Civ. Action No.
                                     )

THOMAS CARROLL, Warden,           )
And Carl C. Danberg, Attorney     )
General of the State of Delaware,  )
                                     )

     Respondent.              )                  06 - 396

---

## MEMORANDUM OF LAW IN SUPPORT OF PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

---



FILED

JUN 20 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

RO scanned

*Anthony Cooper*
Anthony Cooper#00275064
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dated: *June 15, 2006*

## CASE HISTORY

The record in the defendants case shows that he was arrested on January 29, 2003 and subsequently had a preliminary hearing on February 4, 2003 in which a plea of not guilty was entered

Counsel for the defendant made notice of service for the discovery report and on March 24, 2003 a bill of indictment was filed No. 28 and scheduled for case review and arraignment on April 10, 2003.

Defendants case shows he initially was indicted on seven charges.

Defendant entered a guilty plea to two of the seven charges; <u>Assault in the first degree and Possession of a Deadly Weapon During the Commission of a Felony., # 0301018775.</u>

Following the defendants plea on September 30, 2003 defendant was sentenced to a total period of fourteen years of level five and two years of probation to follow. Thereafter, defendant filed a timely motion for reduction of sentence on February 26, 2004 which the court denied on March 26, 2004.

On December 19, 2003 notice of appeal was filed in the above titled case and on December 30, 2003 a letter was sent from the assistant clerk of the Delaware Supreme Court to John S. Edinger directing him to recognize his continuing obligation to represent Anthony Cooper on direct Appeal. (see exhibit A-1)
On April 8, 2004 a motion to withdraw as counsel was filed by John S. Edinger under Supreme Court Rule 26 (C). On April 30, 2004 defendants conviction was affirmed by the Delaware Supreme Court where no arguments were presented by counsel. (SEE Exhibit A-2

PROCEDURAL ISSUES

Superior Court Rule 61, it had been procedurally established that a motion for withdrawal of a plea filed anytime after the imposition of sentence, a plea may be set aside only by motion to rule 61. The standard under the rule 61 by which to judge a defendants request to withdraw a guilty plea is whether the defendant has shown " prejudice amounting to manifest injustice because of a Constitutional Violation."

The procedural requirement of rule 61 (i)(1) demands that a rule 61 motion must be filed within three years from the final judgement. In this case, a fact to be considered is that although appellant was sentenced on November 21, 2003 and his motion for reduction of sentence was timely filed shortly thereafter. For this reason appellants motion must be regarded as being timely filed based on it being filed within three years limitation of filing a rule 61 within the three years of final judgement. However, based on the above principles embodied in Superior Court Rule defendants motion to withdraw his guilty plea is predicated upon claims of ineffective assistance of counsel wherein he maintains that he has been deprived of substantial Constitutional rights.

Therefore, dispite the fact that appeallants motion being presented after his sentence, appellant states that his application is the appropriate remedy available to him and he will demonstrate that his case does meet the required standard of "fair and just reason" as prescribed by present day rule, " prejudice amounting to manifest injustice" under rule 61 (1)(3)(b); whereby this court should exercise its duty to correct the manifest injustice done in his case, and set

aside the judgement of conviction and permit him to withdraw his plea.
State v Insley, Del. Supr., 141 A 2d 610,622 (1958;) Allen v State, Del.
Supr., 451 A 2k 87,88, (1986) citing Smith v State,Del. Supr., A 2d 837
839, (1982); Strickland v Washington,469 U.S. 668 (1984).

## Statement of Facts

The appellant and Sylvia Jones were companions for a period of 24 years. After the initial 4 years of this relationship, both the appellant and Jones (via experimentation) became addicted to the use of cocaine.

For the next 20 years the appellant and Jones experienced the full range of addiction consequences, i.e; loss of employment, homelessness, shelters, foodbanks and a host of other indignities. When the appellant and Jones first engaged in thier relationship, Jones had the responsibility of raising her three children, ages 1 year, 3 years and 7 years. Although the appellant and Jones addictions were extremely exhausting and taxing, the oldest child was able to attend college and the youngest two are high school graduates.

On January 25, 2003, victim Jones visited the appellant at the appellants apartment, located at 2412 n. market street, apartment 205, Wilmington Delaware. Doring the course of this visit Jones informed the appellant that her father had died earlier that day. The appellanthad been a member of Jones family for at least 24 years. Knowing Jones father, whom the appellant had established a wonderful relationship with, the appellant felt the pain of loss as intensely as he had felt the pain of his own fathers loss several years earlier. After a couple of hours of reflecting with each other and doing lots of crying, Jones asked the appellant if he wanted a hit.

In street jargon, a hit translated means, a $10.00 bag of cocaine. The appellant replied, yew to Jones offer whereupon Jones gave the appeallant a $20.00 bil instructing appeallant to get her a bag also.

After returning to the apartment and smoking the cocaine, Jones asked the appeallant if he would make another run ? (another run translated means, would the appeallant go out to buy more drugs). A $50.00 billwas given to the appeallant with the instructions to get two hits, a pint of vodka and a pack of newport cigarettes.

After the appeallant and Jones had smoked the drugs and drank about half the vodka, Jones informed the appeallant that she was leaving. At the door, Jones said that she would let the appeallant know the time and place of her fathers memorial. Jones father was to be cremated.

On tuesday January 28, 2003 at approximately 11:15 a.m. Jones visited the appeallant at his apartment. After having a few drinks of vodka that Jones had brought with her, Jones told the appeallant that her fathers memorial would be held at her mothers home, (Jones mother lived 3 blocks from the appeallant) around 7:00 .p.m. At approximately 6:00 p.m. on January 28, 2003, the appeallant called Jones mothers home a Mrs. Cora Harris, asking if it would be alright with her if the appeallant stopped by to pay his respect promising to stay only very briefly. Mrs. Harris gave the appeallant permission to stop by. This call was made from the appeallants neighbors apartment, a Ms. Betty Yarbray.

At approximately 7:15 p.m. the appellant arrived at Jones mothers home, located at 211 w. 24th st. Wilmington Delaware. The appellant was initially greeted by some of Jones family members, nieces, nephews as well as Jones, who were all gathered on Mrs. Harris front porch. After exchanges of greetings the appellant proceeded into the house where he was greeted by Mrs. Harris. The appellant spent approximately 15 minutes expressing his sorrow and offering comfort to Mrs. Harris. As the appellant was leaving the home, he bidded everyone goodnight telling Jones that he might call her later.

While enroute to his apartment the appellant was approached by a female aquaintence named Tarzana. Tarzana asked the appellant where he was headed. The appellant replied, home. Tarzana asked the appellant if he wanted to get high? The appellant said, yes but he did not have any bucks. Tarzana said, I got you, lets go to your spot.

On the way to the appellants apartment, the appellant and Tarzana stopped at Miltons liquor store, corner of 23th & market st, where Tarzana purchased a fifth of crystal palace vodka. After arriving at the appellants apartment, the appellant and Tarzana smoked cocaine and drank until approximately 12:00 a.m., at which time there was no more cocaine, vodka, cigarettes or money. The appellant told Tarzana that he knew someone who might loan him $20.00 until he got his check the next week, however he would first have to see if he could contact _Them_ by phone. Tarzana said that they could use her daughters phone, she only lived two blocks away. Before leaving his apartment the appellant put a pairing knife and a steak knife into his pockets.

After dialing Jones mothers number and waiting, the phone was answered. The appellant asked;"may i speak with Sylvia please". (response) who is calling ? (answer) It's Anthony; (response) just a minute. Jones got on the phone. (Jones) Anthony, do you know what time it is ? (appellant) yes, but i need a favor real bad. (Jones after hesitation) Anthony, you're high ? (appellant) yes; I'm sorry for bothering you like this. (Jones) Anthony, how much ? (appellant) Just $20.00 until i get my check next week. (Jones) o.k., but you will have to wait until i leave mommy's. (appellant) How long Sylvia ? I could just meet you at the door. (Jones) No, mommy is still up. (appellant) O.K. I'll be at the corner. Syl, i'm sorry, but i got it pretty bad. (translated;"I got it bad means" the urges are overwhelming") The appellant is uncertain as to exactly how long he waited at the corner before going to wait on Mrs. Harris neighbors front steps. Or how long he waited on the steps before Jones came out of her mothers home. In addition to smoking cocaine and drinking alcohol that evening, the appellant had also ingested two tylenol with codine.

After the passing of an undetermined amount of time and while still sitting on the neighbors front steps, the appellant saw Jones, Jones brother Kevin Moore and family friend, Dwight Bunting come out on the front porch of Mrs Harris home, Mrs. Harris was also standing inside of the front porch door. While Moore and Bunting were talking with each other , Jones walked off the front porch and started to walk toward the appellant. The appellant stood up and started toward Jones. As the two were approaching each other, the appellant heard Bunting yell " What do you want motherfucker ? The appellant yelled back " fuck you".

8

Bunting with haste approached Jones and the appeallant. Upon
reaching them, Bunting pushed Jones aside and punched the appeallant in
the mouth, knocking the appeallant to the sidewalk. The appeallant
recalls thinking 'they are going to kill me'. The appeallant struck
out blindly in a attempt to keep Bunting off of him. The appeallant
believes Jones somehow came between him and Bunting, thereby getting
cut. The appeallant vaguely recalls hearing Jones scream. The next
thing that the appeallant recalls is, hearing someone saying, " this
is going to pinch a little" and wondering why he could not see the speaker

The appeallant recieved two stitches in his upper lip.

## Ground Points

In the instant case the defendant will demonstrate that his claims meet the Strickland prongs that, (1) counsels representation fell below an objective standard of reasonableness (2) and that there is a reasonable probability that but for counsels errors, he would not have plead guilty.

To make a showing of counsels failure to conduct a reasonably substantial investigation into the relevant law and facts of defendants case, the following is offered;

(A)  Counsel provided ineffective assistance, by failing to investigate to inform defendant regarding procedural mandates peculiar to defendants case.

(B)  Counsel provided ineffective assistance, by failing to reasonably investigate and obtain police notes and lab reports.

(C)  Counsel provided ineffective assistance, by failing to investigate and to secure statement of material witnesses.

(D)  Counsel provided ineffective assistance, by failing to investigate the backgrounds of, Ms. Jones, Mr. Moore or Mr. Bunting.

(E)  Counsel provided ineffective assistance, by failing to investigate crime scene.

(F)  Counsel provided ineffective assistance, by failing to investigate defendants mental health status.

(G)  Counsel provided ineffective assistance, by failing to investigate defendants background.

(H)  Counsel provided ineffective assistance by, failing to conduct pretrial investigation and advising defendant of available defense.

(I)  Counsel provided ineffective assistance, by failing to secure in writing his negociated plea with State.

(J)  Counsel provided ineffective assistance, by failing to allow defendant the opportunity to review the pre-sentence investigation report.

(K)  Counsel provided ineffective assistance, by failing to adhere to rules of professional conduct.

(L)  Counsel provided ineffective assistance, by failing to advise defendant of his appeallant rights.

I.    PETITIONER ARGUES THAT HE WAS DENIED HIS
RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL
GAURANTEED BY THE SIXTH AMENDMENT OF
UNITED STATES CONSTITUTION,DURING HIS PLEA
NEGOTIATIONS. WHERE COUNSEL FAILED TO ADVISE
PETITIONER OF HIS LEGAL RIGHT. WHERE COUNSEL
FAILED TO REASONABLY INVESTIGATE AND DEVELOP
A DEFENSE, THERBY MAKING HIS PLEA
UNKNOWINGLY AND INVOLUNTARILY ENTERED INTO.

### Standard and Scope of Review

In a proceeding instituted by an application for a writ of habeas corpus by application
for a writ of habeas by a person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be presumed to be correct. The
applicant shall have the burden of rebutting the presumption of correctness by clear and
convincing evidence. 28 U.S.C. § 2254(e)(1).

GROUND ONE

INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he was denied his right to effective
assistance of counsel gauranteed by the Sixth and Fourteenth
Amendments of the United States Constitution during his plea
negotiations. Where counsel failed to advise him of his legal
rights. Where counsel failed to reasonably investigate and
develope a strategy for his defense. Thereby making his plea
unknowingly and involuntarily entered into.

In order to prevail on a motion for withdrawal of a plea of guilty
alledging ineffective assistance of counsel, defendant must show his
counsels representation fell below an objective standard of reason-
ableness and but for counsels error, he would not have plead guilty.
Hill v Lockhart,474 U.S. 52, 58 106 S. Ct. 356, 370 8 L. Ed. 2d 203
(1985O; Asbury v State, Del. Supr., 551 a 2d 53, 58 (1988) citing
Strickland v Washington, 104 S. Ct. 2052.

As the standard scope of review, the defendant in this case,
will show that his case does meet the requirements of Strickland v
Washington, and the violations of defendants United States Constitutional
Sixth and Fourteenth Amendment rights and defendants, Delaware State
Constitutional rights, under article one section seven.

A defendant is bound by his signed statement on the guilty plea
form absent clear and convincing evidence to the contrary. Fullman v
State, Del. Supr., No. 268 (1988) Christie, C.J. (Feb 22, 1989)(order).

However, Superior Court Criminal Rule (11) sets out the procedures that must be followed before accepting a plea of guilty, see the present day Superior Court Rule (11)(c)(d)(e), under rule (11)(d) the court has an affirmative duty to ascertain whether a plea of guilty has been entered knowingly and voluntarily. See, <u>Brown v State</u>, Del. Sup. 250 A 2d 503 (1969); <u>Well v State</u>, Del. Supr. 398 A 2d 161,162-63 (1978); see also <u>McCarthy v United States</u>, 394 U.S. 459 (1969) where the United States Supreme Couty has made it quite clear that a Constitutional right exist assuring that a guilty plea is made knowingly and voluntarily.

Wherefore, the defendant will show actual prejudice from counsels failure to provide a reasonable defense for this defendant and his failure to provide "reasonably substantial investigation" gauranteed by the Sixth and Fourteenth Amendments of the United States Constitution, wher the duty to do both is a must.

> ...The Sixth Amendment imposes on counsel a duty to investigate because reasonably effective assistance must be based on professional decisions and informed legal choices can be made only after investigation of options. <u>Id</u> at 2060 <u>Strickland v Washington</u>.

In response to (A); counsel was ineffective by failing to inform defendant regarding the particulars relevant to the legal procedures directly impacting defendants case and alternatives to be considered. The Sixth Amendment makes the "duty" clear regarding counsels responsibility to provide effective assistance. (SEE EXhiBiT - B-3)

The effectiveness of counsel is governed by counsels understanding, application and adherence to (1) law, (2) facts,

in accordance with the United States Constitution and the Delaware State Constitutional mandates.

Rule 1.4 of Professional Conduct, states;

(A) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(B) A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation.

Counsel failed to reasonably explain to defendant his legal rights regarding the indictment and the elements the State had to prove in order to demonstrate defendants culpability as charged.

Counsels failure to explain these matters of law and fact, placed the defendant in the precarious position of entering a plea of guilty, simply because he did not know then, that the State must prove any elements deemed applicable to the charges defendant was indicted on, e.g. Defendant had informed counsel that it had not been his intent to cause victim Jones any harm. That Jones had sustained her injuries while attempting to interced in the altercation between Bunting and the defendant.

Title (11) § 262: Intentional or knowing causation; Different result from that expected;

( The element of intentional or knowing causation is not established if the actual result is outside the intention or contemplation of the defendant unless):

15

(1) The actual results differ from that intended or contemplated, as the case may be, only in the respect that a different person or different property is injured or affected or that the injury or harm intended or contemplated would have been more serious or more extensive than that caused.

A guilty plea is constitutionally flawed if defendant has an incomplete understanding of the charge. In Henderson v Morgan, 426 U.S. 637 49 L. 2d 108, 96 S. Ct. 2253 (1976) : the defendant plead guilty to a charge of second degree murder without knowing that intent was an element of the crime.

The Supreme Court held that such a plea violated due process because " (A) guilty plea is admission of all the elements of a formal criminal charge, it can not be truely voluntary unless the defendant possess an understanding of the law in relation to the facts."

As to point (B) counsel was ineffective by failing to reasonably investigate and obtain the notes of all police officers called to the scene, and laboratory information collected by the State.

These police notes and laboratory reports are foundational in the development of both defensive and mitigative support evidence. The formal police report to a greater degree are expressive of what the victims and witness contends had occured prior to police arrival.

The police notes would have presented a more objective view of the facts. Facts such as, where all parties were located when police arrived, what parties were engaged in doing, whether Jones was conscious or coherent,

whether blood spatterings were affirming of where victims had claimed
that the assault had occured, defendants location and condition.

These police notes would have confirmed that as contended by
defendant, the incident had taken place outside of Buntings vehicle
contrary to Buntings claim, and this fact would have been further demon-
strated via rule 16 discovery where there was no evidentiary support of
anyones blood being found in Buntings vehicle

> 1. CF. 1 ABA Standards for Criminal Justice,
> standard 4-4-1., At 4-53 (2d Ed. Supp 1986)
> entitled; Duty to investigate:

" It is the duty of the lawyer to conduct a prompt investigation
of the circumstances of the case and explore all avenues leading to facts
relevant to the merits of the case and the penalty in the event of con-
viction. The investigation should always include efforts to secure in-
formation in the possession of prosecution and law enforcement authorities.
The duty to investigate exist regardless of accuseds admission or state-
ment to the lawyer of facts constituting guilt or the accuseds stated desire
to plead guilty." Sims v Livesay, 970 F. 2d 1575 (6th Cir. 1992)


Counsel prejudiced the defendants case by failing to investigate
and secure relevant data that would have demonstrated to the court
defendants lack of intent to harm Jones, which would have resulted in a
less severe penalty.

As to point (C) counsel failed to investigate and secure a state-
ment from material witness Mrs. Cora Harris who was at the scene during
the January 29, 2003 incident. Mrs Harris would have confirmed

that defendant had visited to pay his respects in regards to her husbands memorial celebration earlier on the evening of January 29,2003 where defendant and Jones communicated without incident. Mrs. Harris could have also confirmed that defendant had not initiated the altercation with Bunting on the morning of January 29,2003 where Jones was unintentionally injured while attempting to stop a fight between defendant and Bunting.

" Trial counsel failure to interview potential witnesses whose names had been provided to counsel by defendant amounted to ineffective assistance of counsel." U.S. v Gray, 878 F. 2d 702 ( 3rd Cir. 1989)

As to point (D) Counsel was ineffective by failing to investigate whether the witnesses (passerby) Mr. Moore or the victim Mr. Bunting were under the influence of any substances. Which would have been reflected in the notes of the police officers.

Toxicology evidence confirmed the use of illegal substances by defendant and victim Jones just prior to the January 29, 2003 incident. It was additionally a matter of Hospital records (Christiana) that both the defendant and Jones had extensive histories of alcohol and drug abuse. Based on the seriousness of the accusations and charges pending against the defendant, it was well within the bounds of reasonableness for counsel to investigate to determine the condition of Bunting and Moore at the time of the incident.

Counsel would have found that Mr. Moore was not just a passerby and had a personal interest in fabricating what had happened prior to the arrival of the police.

18

Counsel would have found that Mr. Moore was victim Jones biological sibling. Counsel would have also found that Mr. Moore was a resident at the address of the incident, 211 W 24th street and that Mr. Moore was a convicted drug dealer, who was in violation of his probation by being on the scene and taking an active role in what had happened, i.e. hitting defendant with cinderblock, placing him in a position of possible arrest for assaulting the defendant.

Counsel would have further discovered that Mr. Bunting was not as he had claimed, victim Jones brother, but was instead, her former lover.

Counsels failure to investigate and to establishthe relationship between all persons involved in the incident , fell below the standards of reasonableness and further prejudiced the defendants case by allowing to stand, the false testimony that corrupted the facts and painted a scene which resulted in a 14 year sentence imposition, where the actual facts of lack of intent, would have called for a substantially less severe penalty of 2 years for assault in the second degree and a 2 year minimum for possession of a deadly weapon during the commission of a felony. Citing ABA 4-4-1 At 4-53 (2d Ed. Supp 1986) supra.

As to point (E) counsels failure to reasonably investigate access and assess the available facts by visiting the crime scene amounted to ineffective assistance. In order to fully bring to bear the tenets of the adversarial process, counsel must investigate, develop and bring into the forefront, all pertinent evidence relevant to the successful appli- cation of law and facts.

Had counsel visited the crime scene, counsel would have discovered, unlike the assertions made by prosecution, that there were no bushes from which the defendant could have jumped. Discovered that the street lighting did not afford the defendant the opportunity of lurking in the shadows.

Bunting claimed that Jones was accosted and injured, (see exhibit A-3-pg,3 lines 12 thru 16 of investigative narrative) while sitting in his vehicle. As a relevant element of the crime scene, counsel should have determined who's blood was, if any, was found in Buntings vehicle. Defendants contentions that Jones injury unintentionally occurred outside of Buntings vehicle would have been supported, had counsel engaged in crime scene discovery. There were no laboratory reports of blood found in Buntings vehicle. Counsel was also ineffective by failing to secure results of laboratory conclusions of who's blood was found on defendants shirt and 3/4 length coat, takened by police.

" Counsels failure to conduct a pretrial investigation by failing to go to the scene of the crime, to secure material fact information and to locate potential witnesses amounted to ineffectiveness of counsel". U.S. v Gray, 878 F 2d 702 (3rd Cir. 1989)

As to point (F) Counsels pretrial failure to investigate, research and develop defendants mental health concerns, fell below the standards of reasonableness dictated by, the United States Constitutions Sixth and Fourteenth Amendment rights of the defendant and stands as an affront to the guideline rules of professional conduct.

Professional Conduct Rules

Preamble: A lawyers responsibilities:
Paragraph, (2) clearly states in part;
as advocate, a lawyer zealously asserts the clients
position under the rules of the adversary system.
As a negotiator, a lawyer seeks a result advantageous
to the client but consistent with requirement of honest
dealings with others. As evaluator, a lawyer acts by
examining a clients affairs and reporting about them to
client or to others.

Counsels failure to investigate and reasonably implement the
mental health information that was available to him for defensive and
mitigating support factors, constitutes ineffectiveness. This failure
to investigate also prejudiced the defendants case by excluding psy-
chological evidence which would have supported the fact that the defen-
dant was not of the frame of mind desiring to cause harm to Jones on the
night of January 29, 2003 incident.

In the instant case there exist no question's as to whether the
defendant injured victim Jones. He has humbly conceded this fact to
himself and the authorities.

The pivotal fact to be considered however, was the defendants
repeated claim that, it was not his intent to bring about any harm to
Jones. Defendant had given statement to counsel regarding what occurred
on January 29, 2003 and his lack of intent to harm Jones. During his
competency hearing, defendant referred to his lack of intent to harm
Jones. Two days prior to trial defendant again stated to counsel, his
lack of intent to harm Jones, where counsel informed defendant that
"lack of intent only counted in murder".

21

Had counsel but applied the reasonably, minimal standards of effective assistance, i.e., investigate, research and development, he would have discovered substantial documented evidence affirming defendants lack of harmful intent toward Jones.

There existed sufficient psychological evidence. Evidence where professional assessments had been made relating to the subject matter of defendants thoughts and feelings as they pertained to Jones.

Counsels reasonable investigation would have found that on, October 16, 2002, defendant had sort out the Christiana Care Psychiatric Admission Assessment Unit; (see exhibit A-5 ) where defendant was admitted diagnosed as suffering from major depression disorder. Depression so severe that psychoactive drugs were required for mediation combined with twice weekly therapeutic interventions, i.e. group and individual therapy. Defendant was actively engaged in behavior modification prior to and during the period of January 29, 2003 incident.

On October 16, 2002 the defendant found himself lying on his couch curled into a ball, talking to himself, Jones and imaginary others. This was not an unusual occurrence as he had been engaging in this type of behavior for several month's. Defendant attributed this behavior to his drug and alcohol use, and lack of eating or sleeping for days at a time.

On this particular evening, (October 16, 2002) the illusions and hullucinations took on a new and frightening reality.

Believing that he was experiencing a nervous breakdown, defendant went
to the Christiana Hospital emergency room, seeking help.

Psychological evidence maintained by First Correctional Medical,
Howard R Young Institution mental health unit. Where defendant was
placed upon his arrival in the prison, (see exhibit A-6) where defen-
dant spent one year in daily group and individual therapeutic, enhanced
by psychoactive drugs, diagnosed as suffering from major depression
disorder. Counsel was aware of these therapeutic interventions prior
to trial as well as defendants continued therapy during trial and at
the sentencing stage.

Psychological evidence maintained by the Delaware Psychiatric
Center. (see exhibit A-4) where court ordered compentency hearing
was held prior to plea colloquy. Although this examination was designed
to determine defendants ability to understand court proceedings, con-
tained in this inquiery examination was a significant amount of reflect
ive evidence pertainung to defendants state of mind, prior to, during
and after the incident of January 29, 2003. Evidence pointing to the
fact that defendant held no predispositions for causing harm to Jones.

Counsels disregard of this source of pertinent information as
a potentially relevant defense and mitigation factor, amounted to
an unreasonable professional performance by counsel and prejudiced
defendants case by not using this psychological evidence as a strate-
gic vehicle of defense and as a mitigation tool, demonstrating for
court consideration at sentencing, that defendant was human,

and not the maniacal, depraved ,uncaring individual depicted by the
act on January 29, 2003.

Counsel, in light of the injury to Jones and the serious con-
sequences that could beset his client, and having the authority,
could have, in fact should have, conducted a independent psychological
evaluation to determine defendants state of mind during the incident
of January 29, 2003.

Counsels failure to investigate, develop and present the afore-
mentioned psychological evidential information abridged the defendants
sixth amendment right of effective assistance, his fourteenth amend-
ment right of due process and placed counsel in the unsupportable
position of not being able to make an informed decision regarding case
strategy.

" Trial counsels failure to investigate defendants mental state
and present evidence at trial based on defendants mental state consti-
tuted a significant claim of ineffective assistance of counsel and
required the district court to conduct an evidentiary hearing." U.S.
v Burrows, 872 F 2d 915(9th Cir. 1989)

"Defense counsels failure to develop evidence relevant to defen-
dants psychological state of mind at the time of crime, constitutes
ineffective assistance of counsel." Johnson v Dugger, 911 F 2d 440
(11th Cir. 1990)

(G) Counsels failure to inbestigate and develop defendants
background history for the courts review, and consideration, constituted

prejudicial, unreasonable ineffectiveness of counsel.

It fits into the definition of prejudice, i.e., partiality; bias; a leaning towards one side of a cause; that if the court is presented with only one aspect of defendants character, then this single characteristic is all that will be ruled on by the court. In the instant case, the prosecutions presentation of defendants criminal history and the charges at the time of defendants, plea colloquy and sentencing was the only source of relevant information offered to the court for it's ruling consideration. By failing to provide historical evidence of defendants character development, counsel forced the court into a prejudicial posture.

Had counsel contacted defendants family and former social worker, a Ms. Ruth Morris, counsel would have discovered that defendant from age 3 until age 8 years had lived with his share cropper paternal grandparents. From age 8 until age 12 years, lived with a alcoholic father who's physical abuse landed defendant in foster care, where defendant remained until he ran away at age 16 to live on his own, getting married at age 18 years with only a 9th grade education, attemping to take care of a 17 years old wife 2 children along with himself. The defendants family could have also confirmed defendants over 20 years struggles with drug and alcohol.

Counsel could have in addition, interviewed Coopers neighbors. Neighbors suffering from one or many dibilitating deseases that restricted their mobility and or other activities.

Neighbors who would have vouched that Cooper was a outgoing person
who willingly helped by running errands or help clean thier apart-
ments, take out garbage etc.

   Neighbors could have as well informed counsel of Jones(whom
they all knew) frequent weekly visits with Cooper, Jones at times
sitting with Cooper in apartment yard while talking with them.

   " Trial counsels failure to present evidence from defendants
family members and others, amounted to ineffective assistance of
counsel. Tyler v Kemp, 755 F 2d 741(11th Cir. 1985)".

   Counsels securing of this information would have once again
offered for consideration of the court a more balanced illustration
of who they were judging.

   As to (H) Trial counsel failed to develop and advise defendant
of available defense prior to plea colloquy or during plea nego-
tiations. At the plea negotiations, counsel was adamant and re-
peatedly informed defendant that the State was going to try him as
a habitual offender and that he would recieve no less than 20 to 40
years in prison. When defendant asked what his defense would be,
counsels reply was, that there was no defense for habitual offenders.

   Defendant, being confused, again stated to counsel that it was
not his intent to cause Jones harm. Counsels reply was " Intent only
counts in murder". (see exhibit B-1, frame 2 lines 16 thru 23,
continued; sheet 1, frame 3 lines 1 thru 10.

Counsels performance fell below the standards of reasonableness
and further prejudiced defendants case, where counsel failed to inform
defendant that it was incumbent upon the state to prove all material
elements of the indicted charges. e.g. "intent""mental state".

It should be noted; under the belief that counsel was preparing
him a defense, defendant had rejected a first plea offer of 0 to 10
years on the charge of assault in the first degree, where counsel
had informed the defendant that under the habitual offender act, the
least sentence that he would recieve, was double the 10 year sentence
offer.

After the defendant,(where counsel should and would have known,
had counsel did his duty to investigate) brought to the courts
attention, that he did not fit the criteria of habitual offender status
the court, after checking with prosecution confirmed defendants claim
and indicated that defendant would not be faced with habitual status,
(see exhibit B-1 sheet 4 frame 13 lines 2 thru 23) "Mr. Roberts; Mr.
Cooper explained that he is not habitual, I'm looking at the history
of his N.C.I.C. file from up north some place-- Massachusetts. And
it is confusing, but it appears-- and I don't have any reason to dis-
pute what he said-- that he may be correct, it may not be attempted
murder conviction up there, it might have been reduced to an assault.
But it's hard to read the records. But I tracked the number, and the
attempted murder, in fact, shows up on the assault first. So that
puts us in a different posture where he's not an habitual, so I ex-
tended to Mr. Edinger a revised plea offer in light of that information".

" The Court; Well, then, thats very helpful that Mr. Cooper, our conversation has had a benefit that neither one of us intended or anticipated, and that is that the state has had an opportunity to review the very thing that was of concern to you, and that was whether or not you were an habitual offender or eligible for that status. Now Mr. Edinger has a different proposal foryou".

During this plea negotiation, counsel informed defendant that the state was adding on to the plea offer of assault first degree the charge of possession of a deadly weapon during the commission of a felony which would carry a sentence of 20 years.

Defendant asked counsel for counsels opinion and his recommendation. Counsel stated " you have a decision to make". When defendant explained that he did not understand what was happening and persisted in seeking clarity from counsel, counsel responded by stating " if you don't sigh the plea, the state will add on the other remaining charges, you must hurry up and decide, the judge wants us back in court'.

Having been told that he had no defense, having the charges increased after it was concluded that defendant was not a habitual offender, having counsel who refused him assistance by witholding his opinions, advice and recommendations, being told to hurry had the overwhelming effect of causing the defendant great confusion and it was under these confused conditions that defendant entered into the plea agreement.

Defendant contends that had counsel advised him of the legal procedures binding the state to a demonstration of proving intent or state of mind at the time of the January 29, 2003 incident, he

would have opted for trial, where he firmly believes a jury would have found him guilty of a lesser charge based on the evidential fact of less culpability, bringing about a sentence of 2 years for the charge of assault in the second degree and a minimum sentence of 2 years for possession of a deadly weapon during the commission of a felony,where also at sentencing, the court would have considered the lessened culpability as a mitigating factor.

" Trial counsels failure to properly advise defendant of the consequences of his plea is ineffective assistance'. Tower v Phillips, 979 F 2d 807 (11th Cir. 1992)

" Trial counsels failure to advise defendant of available defense prior to entering guilty plea, rendered the plea involuntarily entered, where the defendant was not able to make conscious decision of whether to plead guilty constitutes ineffective assistance of counsel.' Brown v Butler, 811 F 2d 938 (5th Cir. 1987)

As to (I) Counsel misrepresented states position regarding plea and sentencing. Counsel had informed defendant during plea negotiations that state would be asking at trial regarding the charges (see exhibit A-7, written plea agreement) for a presentence investigation, restitution to victim, no contact with victim or her family and various program participation.When defendant inquired of counsel as to what specific level 5 sentence recommendations the state was making, counsel informed defendant that the presentence report would be making those recommendations.

29

(see exhibit B-1 sheet 4 frame 14 lines 18 thru 23); where in
open court the states agreement was fully and clearly stated, without
on the record, reservation for sentence allucutions at defendants
sentencing hearing, " Mr. Roberts, we are recommending a presentence
investigation, restitution to the victim, and the victims compensation
board, no contact with the victim or her family, complete domestic
violance counseling program, as well as a substance abuse evaluation
and follow any tratment plan'.

(SEE exhibit B-1 sheet 4 frame 15 lines 3 & 4) " Mr. Edinger;
and that is the sum and substance of the plea agreement".

(SEE exhibit B-1 sheet5 frame 18 lines 1 thru 12, where Court
is speaking; " The recommendation of sentencing, of course, will come
from the presentence investigator. and it will be considered by the
coudt. The Court will make the final determination of what sentencing
is appropriate, but it will not be less than two years, because there's
a minimum mandatory sentence. The total possible sentence of legal sen-
tence could be up to 30 years but the guidelines are for substantially
less than that--on the assault, up to three years at level V, and on
the weapons charge--" Mr. Edinger: actually it's up to 30 months. and
thats my bad handwriting Your Honor".

While in a state of confusion, counsel induced defendant into
signing the plea agreement, by misrepresenting to defendant that the
State was making no specific level 5 sentence recommendations, a
statement recanted by counsel at defendants sentencing hearing,(see
exhibit B-2 frame 7 lines 19,20,21) " Mr. Edinger, my understanding
is the States going to be asking for a significant amount of jail
time on these charges".

(NOTE)( counsel had failed to inform defendant, or state in
open court for Court review, the understanding that existed between
counsel and State). There was neither in writing or orally implied
by counsel to defendant at any stage of the proceedings, counsels
" understanding with the State, that the State intended to recommend
25 years of imprisonment. Had this understanding been made known to
the defendant, he would have certainly requested that the Court would
allow him to withdraw his plea of guilty.

The Fourteenth Amendment of the United States Constitution
requires as a due process duty, that counsel prosecution fully disclose
all material elements of a case. Counsels failure to disclose his
understanding with the State, fell below the standards of reasonable-
ness of effective assistance of counsel and prejudiced defendants
case by allowing the Court to believe that defendant had reviewed all
revelant material matters prior to entering a plea of guilty.

" Counsels misrepresentation that the State had agreed not to
make any specific level 5 sentence recommendation, where no such
agreement existed, where the defendant recieved 14 years, the judgement
and guilty plea should be set aside'. McAleney v United States, 539
F 2d 282(1st Cir. 1976)

As to (J) Counsel failed to read or review presentence investigation
with defendant. In terms of application of law and fact being the
standards used by the Court, law and facts are equally important
whether it be at the outset of a case or at it's closing. Counsels
performance regarding the presentence investigation report, violated
defendants right to effective assistance of counsel by not permitting
defendant his Fourteenth Amendment right of due process.

31

his Delaware State Constitutional, article (1) section (7) rights and counsels performance was in direct contradiction to the Professional Rules of Conduct.

> Rule 1.1 Competence; a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for representation.

> Rule 1.3; a lawyer shall act with reasonable diligence and promptness in representing a client.

> Rule 1.4, Communication; (a) a lawyer shall, (2) reasonably consult with the client about means by which the client objectives are to be accomplished. (4) promptly comply with reasonable requests for information.

> Comment: [1] reasonable communication between the lawyer and the client is necessary in the representation".

Defendant had a due process and procedural right to review the presentence investigation report in order that counsel and defendant could determine errors for correction prior to the imposition of sentence. A sentence that it is reasonable to conclude would have been reflective of errors found in the presentence investigation report. It was both, prosecutions and counsels duty to insure defendants United States Constitutional right of due process in the service of justice.

The fact that counsel stated in open court (see exhibit B-2 frame 4 lines 14 thru 16) "Mr. Edinger; the circumstances that surrounded the incident wer'nt brought entirely forward in the presentence report".

(see exhibit B-2 frame 6 lines 10 thru 14) "Mr. edinger; I think the presentence report is a little sparse on the details of what actually occurred, and I think the court, in evaluating what happen needs to have a fuller understanding of what the surrounding circumstances were".

(see also exhibit B-2 frame 8 lines 11 thru 14) "Mr. Roberts; I agree
with Mr. Edinger that the evidence is a little sparse, and the evidence
that the State would present at trial would be that Mr. Cooper was stalk-
ing this victim for some time."

     The presentence report was not complete, thereby negating it as a
reliable source of pertinent information. A fact with which the prosecu-
tion agreed. Counsels performance fell below the standards of reasonable-
ness where counsel failed to allow defendant to refute errors contained
within the sparsely informative presentence report. Counsel was ineffective
by his failing to object to the entry of such sparse information, where
allowing entry into the record, prejudiced defendants case by permitting
uninvestigated, imprecise, unimpeached evidence into the record for court
consideration and adjudication. Both counsel and prosecution were negli-
gent of their duties and responsibilities as officers of the court by
letting this presentence report to go forward, without being examined by
defendant.

     Counsel further abdicated his professional duty as, defender and
adversary, where counsel failed to object to the prosecutions misconduct
of amending the presentence report with the statement, (see exhibit B-2
frame 8 lines 12, 13, & 14) Mr. Roberts; the evidence that the State would
present at trial would be that Mr. Cooper was stalking this victim for
some time. " The record provides , during plea colloquy or sentencing,
no evidence supportive of this statement by prosecution. Counsel was
aware that no such evidence existed, and should have filed an objection
to prosecutions brazen attempt at prejudicing the courts decision about
the sentence to be imposed. Trial counsels failure to read and review
the P.S.I. with defendant constitutes performance below an objective
standard of reasonableness, which meets the first prong of Strickland.
U.S. v Bartholomew, 974 F 2d 39 (5th Cir 1992)

33

as required by rules of criminal procedure, is prejudicial error.
Defense counsel made no specific objection to any fact in presentence
report, and defendant could not have tried to contradict reports
factual finding, because he was not given the opportunity to read or
discuss it". U.S. v Sustaita, 1 F. 3d 950 (9th Cir. 1993)

As to (K) counsel was ineffective where counsel was in direct
conflict with the Rules of Professional Conduct.

- Rule Preamble; a lawyers responsibilities. [1] states in part,
  " a lawyer as a member of the legal profession, is a repre-
sentative of client".

   [9] " these princples include the lawyers obligation zealously
   to protect and pursue a clients legitimate interests within
   the bounds of the law".

   [14] " the rules of professional conduct are rules of reason".

Counsel performance was in direct conflict with [9] of the pre-
amble, when he stated in open court (see exhibit B-2 frame 4 lines
7 & 8 also frame 7 line 6, respectively) "Mr. Edinger; when he took
this plea, he recognized that what he had done was unforgiveable".
" this could have been a murder case".

It is a clearly known fact of oratory that words properly orated
tends to possess the capability to persuade, enrage, induce, repulse
and to generally influence the direction of human behavior. Anyone
finding themselves in any adversarial arena, be it personal, political
or judicial, must be particularly cognizant of their oratory behaviors.

These statements by counsel were reckless, prejudicial to de-
fendants case and served the dual purpose of inciting the court and
setting the stage for, (see exhibit B-2 frame9 line 7)
" Mr. Roberts; it very easily could have been murder". This was a
off the record factually misleading statement. It could not have
been a murder, it could have only been what it was, an unintentional
caused injury.

34

Neither counsel or prosecution stated how it could have been murder. This lack of explanation regarding, the how, it could have been murder, is in direct correlation to counsels and prosecutions inability to legally or in any other way, prove to the court that a injury leads directly to a death that has not yet occurred. This fact makes it conclusively clear that defendants champion and prosecution were engaged in inflaming the courts passions, therein, impacting the courts imposition of defendants 14 year level 5 sentence.

Defense counsels performance was not only ineffective, but counsel abandoned the required duty of loyalty to his client; counsel did not simply make poor strategic or tactical choices, he acted with reckless disregard for his clients best interest and apparently with the intention to weaken his clients case. Osborn v Shillinger,861 F. 2d 612 (10th Cir. 1988)

As to (L) counsels failure to advise defendant of his appeallant rights constituted ineffective assistance. One of the outstanding qualities of the United States and Delaware States Constitution as they are applied to the American Judicial System, is the right given litigants to redress a percieved miscarriage of justice. This opportunity is manifested in the appeals process format. It is a duty of counsel to advise clients of their appeal rights. Rights governed by the Sixth and Fourteenth Amendments of the United States Constitution of due process and effective assistance of counsel.

In the instant case, as the broker of the plea agreement, counsel was fully aware of the breached agreement as counsel had explained it to defendant; i.e. " The State will not be making any level 5 recommendations." Defendants contentions on direct appeal was that, the State had violated it's agreement.

Counsel failed in his professional responsibility to defendant, not only to advise defendant of his limited appeal choices, but to also review the records to determine any meritorious possibilities. This ineffective performance by counsel was further compounded by his failure to argue the merits of defendants proffered contentions. Hence forcing the court to rule merely on defendants complaint, minus factual support, thereby assuring that defendants complaint would be summarily denied.

Defense counsels failure to ask defendant whether he wanted to appeal and failed to discuss the merits of an appeal constituted ineffective assistance. Baker v Kaiser,929 F. 2d 1495, 1499, 1500, (29) (10th Cir. 1991)

Retained counsels failure to file a motion to withdraw as counsel before defendants time to file appeal, constitutes ineffective assistance of counsel. Abel v Kaiser,913 F. 2d 821 (10 Cir. 1990)


" The Supreme Court held that, the Constitutional right to counsel requires that on an indigents first appeal from his conviction court appointed counsel support the appeal to the best of his ability, requesting permission to withdraw only if he finds the case to be wholly frivolous, in which event he must file a brief referring to anything in the record that might argueably support the appeal." Anders v California 386 U.S. 738, 18, L. Ed. 2d 493, 87 S. Ct. 1396, Reh Den 388 U.S. 924, 18 L. Ed. 2d 1377-87 S. Ct. 2094 (1967)

II.    PETITIONER ARGUES THAT HE WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GAURANTEED BY THE SIXTH AMENDMENT OF UNITED STATES CONSTITUTION, DUE TO COUNSELS FAILURE TO INVESTIGATE AND DEVELOP MITIGATING EVIDENCE THAT WOULD HAVE SUPPORTED PETITIONERS CASE DURING SENTENCING.

Standard and Scope of Review

In a proceeding instituted by an application for a writ of habeas corpus by application for a writ of habeas by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Ground Two

Ineffective Assistance of Counsel

Defendant argues that he was denied his right
to effective assistance of counsel gauranteed
by the Sixth Amendment of the United States
Constitution, due to counsels failure to in-
vestigate and develop mitigating evidence that
would have supported defendants case during
sentencing.

Defendant essentially acknowledges that in order to prevail on
a motion for withdrawal of a guilty plea alledging ineffective assist-
ance of counsel, defendant must establish that his counsels representa-
tion fell below an objective standard of reasonableness, and that there
is a reasonable probability that, but for counsels error, he would not
have plead guilty. Hill v Lockhart, 474 U.S. 52, 58 108 S.Ct. 366, 370
88 L. Ed. 2d 203 (1985); Asbury v State, Del. Supr., 551 A 2d 53, 58
(1988); Citing, Strickland v Washington, 104 S. Ct. 2052.

Unlike ground one, where defendant had contested the validity
of the plea as to whether it was knowingly and voluntarily made, pri-
marily based on counsels failure to inform defendant of legal procedures,
and counsels ineffective assistance, evidenced by counsels failure to
investigate in order to provide a defense prior to plea entry, defendant
now advances a second claim of counsels ineffectiveness, supported
based on counsels unreasonable inadequate performance, due to his
failure to investigate reasonably and reasonably develop the available
mitigating evidence as collateral support of defendants case.

Accordingly, defendant states that his claim must be evaluated
by standard set forth in Strickland, supra, especially where, as in
the case in hand, there is a reasonable probability, which is a prob-
ability sufficient to undermine confidence in the outcome, an outcome
wherein defendant sentence of 14 years would have been 30 months for
assault in the first degree and 2 years for possession of a deadly weapon
during the commission of a felony. (see exhibit B-1 sheet 5 frame 18
lines 6 thru 9) " The Court; the total possible sentence of legal sen-
tence could be up to 30 years, but the guidelines are for substatially
less than that ".

Had counsel merely conducted a reasonable investigation, counsel would have discovered, (1) evidence from victim Jones family. (2) Medical evidence. (3) Psychological evidence. (4) Evidence from defendants family. (5) Evidence from defendants neighbors. All five sources of information would have provided evidence of a mitigating nature.

" It is incumbent upon counsel to include an independent examination of the facts, circumstances, pleadings and law involved", in order to discharge the Sixth Amendment obligation. <u>Stickland v Washinton</u>, supra, citing, <u>Rummell v Estell</u>, 590 F. 2d 103, 104 (5th Cir. 1979)

In Strickland, the court acknowledged that:
> ...The Sixth Amendment imposes on counsel a duty
> to investigate because reasonably effective as-
> stance must be based on professional decisions,
> and informed legal choices can be made only after
> investigation of options. I.d. A 2060.

The United States Supreme Court held that a defense attorney is required to conduct a " reasonably substantial investigation into the line of defense, since there can be no strategic choice that renders such an investigation unecessary". These remarks were drawn in the context where counsel defended his performance on the basis that he exercised his strategic choice, counsel must have sufficient data at hand.

As to (1) Counsel was ineffective where he failed to interview and secure evidence from Jones family members. Defendant Cooper had been a exclusive companion of Jones for 24 years. The pertinent factor

of a mitigative nature that would have been gained by counsel is that,
Jones family members could gave attested to the fact that defendant had
never in the 24 years with Jones, hit Jones or caused her any physical
harm, never a bruise. This is a very serious, sentencing altering
mitigation fact, that should have been made known to the court at sen-
tencing, where the court could have determine the defendants behavior
was an aberration. An aberration that must be addressed, but not in
the severely punitive imposition of a 14 year sentence.

As to (2) counsel was ineffective by failing to investigate,
reasonably, defendants medical history. Where it would have been dis-
covered that at the age of 3 years, defendant experienced burns to his
body that were devastating to the degree that skin from his buttocks
was grafted in order to be placed on his leg preventing possible deatd,
Where at age 5 1/2 defendant while swinging in tree swing, fell onto
the roots of the tree resulting in operation on defendant to prevent
lockjaw. Where in the early 1990's defendant was operated on for gun
shot wound caused by assailants robbing defendant, in the same neigh-
borhood of the January 29, 2003 incident. ( Information retained by
the Wilmington police department).

Counsel would have discovered that, after three collapes of his
lungs in the late 1990's, defendant was flown from Delaware to the
Temple University Hospital, where defendant underwent experimental
lung reduction surgery on both lungs. The latter medical evidence was
particularly relevant because it would have given rise to the question
of, how much physical aggression could defendants body sustain. A res-
pertory specialist could have affirmed that in a quick burst of
adrenalin, the defendant could have inflicted the injury sustained by
Jones. However, defendants ability to engage in struggle with Bunting
as was the claim of Bunting and witness Moore, would have been virtual-
ly impossible. Defendants lung volume capacity was such, that oxygen
could not be integrated sufficiently to support the muscle dexterity
require for any substantial resistence or struggle.

Counsel could have obtained these medical facts from the Christ-
iana Hospital, where it was determined that defendats inability,

to breathe was sufficiently restricked that further employment was not
possible. Evidence maintained by the Temple University Hospital, where
the lung reduction surgery had been performed.

Counsel was bound by the United States and Delaware Constitutions
to make reasonable overtures to place the defendant in the best evi-
dentiary supported position possible at every stage of the procedural
process.

As to (3) As stated in ground one, counsel was ineffective by
failing to investigate and present mental health issues. Counsels
abdication of counsels Constitutional and professional duties and re-
sponsibilities, is further evidenced by counsels failure to formulate
a strategic determination as to the presentation of mitigating facts,
for court review. (see exhibits A-4-5-6) These exhibits in and of them-
selves are not as complete as the information that counsel could and
should have obtained and presented on defendants behalf at sentencing.

As to (4) Counsel was ineffective  where his performance fell
below reasonable investigation for evidence mitigating the offending
behavior of defendant. Evidence that would have been forthcoming via
interviewing defendants family members.

Defendants family could have provided the court with evidence
for review of defendants battle with drugs and alcohol. Family could
have attested to the fact that, although defendant and Jones suffered
severe addiction, their bond was such that they refused to abandon each
other. This family information could and should have been used to high-
light the fact that, based on a bond of being together for 24 years,
having developed love for each other, having been co-dpendants in the
area of drug and alcohol abuse, it was reasonable to conclude that the
defendant, as claimed, had met Jones to borrow money for the purchase
of drugs and not to cause her injury.

As to (5) Counsel was ineffective and his performance

fell below the standards of objective reasonableness, where counsel
failed to investigate research and interview defendants neighbors.
Neighbors who could have provided testimony of the fact that Jones, was
a frequent visitor with defendant, at times sitting talking with them in
the apartment yard. Neighbors who knew Jones personally as their former
neighbor. A neighbor who could have affirmed that on saturday January 25
defendant had called Jones mother seeking permission to pay his respects
at Jones fathers memorial. (defendant used neighbors phone to place call)

    The presenting of mitigating evidence was paramount in the instant
case. Counsels unsubstantiated rhetoric, )see exhibit B-2 frame 4 lines
17 thru 19) "Mr. Edinger; at the time Mr. Cooper was intoxicated, he has
a drug problem, an alcohol problem, and probably some mental health issues".
(see B-2 frame 4 lines 22 & 23) "Mr. Edinger; this relationship that had
been on and off, obviously violence being involved".


    The sentencing hearing is repleat with counsels conjecture and
suppositional comments. Comments devoid of reasonable and substantial
investigation of the facts of defendants case. There existed as a matter
of record, no evidence to support counsels prejudicial comments regarding
any violence against Jones beyond the case at hand. Counsels ineffective
assistance is apparent when viewed from counsels lack of responsibility
to his client and stands as proof that counsel engaged in damaging pre-
sentation to the court, without the crucial pre-requisite of being in-
formed of the facts.


    In addition, counsels performance and speculations severely pre-
judiced the court, in that counsel presented absolutely no concrete
evidence supporting his statements, for court review which is evidenced

by the sentencing order where there exist no mitigating evidence recieved
or considered by the court. (see exhibit C-4-pg-5)

Although counsel refuses to release defendants statement, (of lack
of intent to harm Jones) and the photo takened by police of defendant on
the night of January 29, 2003 for use in the preparation of the instant
motion, the photo does exist and should have been included in counsels
presentation of mitigating evidence at defendants sentencing hearing.

Evidence where defendant had been beatened so severely, that both his
eyes were swollen completely shut, and remained shut for six consecutive
days, while defendant was recieving medical treatment in the prison dis-
pensary. It is reasonable to believe that the court would have, upon re-
view of this photo, determined that something other than what witness
Moore and Bunting claimed, had in fact happened at the scene. (see exhibit
D-1 where counsel acknowledges having possession of the police photo of
defendant.

Counsels ineffectiveness, i.e. failing to conduct a reasonable
investigation in order to develop mitigating evidence that was available
in support of defendants position, is readily visible. This lack of in-
vestigation speaks to the possible consequences, (in the instant case
14 years of level 5  imprisonment) where counsel was uninformed based on
inadequate professional concern for the welfare of his client, and
alienated defendants Sixth and Fourteenth United States Constitutional
rights of, effective assistance of counsel and due process, respectively.

Trial counsels failure to secure independent psychological analysis
of defendant  and present evidence that defendant had a mental condition
during the time he committed the crime, constituted ineffective assis-
tance.

43

Loyd v Whitley, 977 F 2d 149(5th Cir. 1992)

Trial counsels failure to investigate, present mitigating circumstance during penalty phase, constituted ineffective assistance. Cave v Singletary, 971 F 2d 1513 (11th Cir. 1992)

Trial counsels failure to investigate into the defendants background for any mitigating evidence rendered his performance constitutionally deficient. Bolder v Armontrout, 713, F. Supp. 1558 (W.D. M.o. 1989)

Based on the aforementioned facts, the defendant respectfully request that this court upon the finding of merit in this case, vacate defendants sentence of 14 years and remand his case for resentencing or a more appropriate disposition.

III.    DENIAL OF PETITIONERS MOTION FOR SUBSTITUTION
        OF COUNSEL, DEPRIVED PETITIONER OF EFFECTIVE
        ASSISTANCE OF COUNSEL.


Standard and Scope of Review

In a proceeding instituted by an application for a writ of habeas corpus by application

for a writ of habeas by a person in custody pursuant to the judgment of a State court, a

determination of a factual issue made by a State court shall be presumed to be correct. The

applicant shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1).

## Ground Three

Denial of defendant's motion for substitution
of counsel, deprived him of effective assistance
of counsel.

## Sixth Amendment

In all criminal prosecution, the accused shall enjoy the
right to a speedy trial by an impartial jury of the state
and district wherein the crime shall have been committed,
which district shall have been previously ascertained by
law and to be informed of the nature and cause of the ac-
cusation; to be confronted with witnesses in his favor,
and to have the assistance of counsel for his defense.

## Fourteenth Amendment

Section (1) all persons born or naturalized in the United
States and subject to the jurisdiction thereof are citizens
of the United States and of the State wherein they reside.
No State shall make or enforce any law which shall abridge
the privileges or immunities of citizens of the United
States; nor shall any State deprive any person of life,
liberty or property, without due process of law, nor deny
to any person within it's jurisdiction the equal protection
of the law.

## Delaware State Constitution

Article (1) section (7): In all criminal prosecution's,
the accused hath a right to be heard by himself and his
counsel, to be plainly and fully informed of the nature
and cause of the accusation against him, to meet the wit-
nesses in their examination face to face, to have compul-
sory process in due time, on applications by himself his
friends or counsel for, obtaining witnesses in favor and
a speedy and public trial by an impartial jury; he shall
not be compelled to give evidence against himself nor
shall he be deprived of life, liberty or property unless
by judgement of his peers or by law of the land.

The above mentioned United States and Delaware State Constitutional rights are at the heart of concern for the defendant. Had counsel reasonably investigated and developed the facts surrounding defendants case, applied Delaware law to those facts, informed defendant of elements the State had to prove in order to find him guilty of, assault in the first degree, defendant would have exercised his rights by opting to go to trial, where based on evidence that should have been gathered by counsel, there would have existed a high probability that his sentence would have been substantially less than the imposed 14 years.

On June 26, 2003 a letter of response was written by defendant Anthony Cooper, and sent to counsel, Mr. John Edinger. (see exhibit C-1)

In this letter the defendant expressed his dismay regarding counsels lack of interest in his case, demonstrated by counsel's flippant remarks pertaining to the status of defendants case and the consequences to be expected, stated during video interview with counsel; "20 years 40 years, no big deal".

As of June 26, 2003 counsel had made no proposal of possible defensive strategy. Thus, it is clearly evident that counsel showed no interest in fulfilling his Sixth and Fourteenth United States Constitutional duties or obligations. Based on defendants perception that counsel was not preparing a defense, defendant offered for possible defense the fact that he was mentally ill. Defendant gave counsel names of persons to be contacted as support for his position.

(see exhibit C-1-pg 2) "Mr. Cooper, we can start to select the jury after or before the following people are called to substantiate my claim of mental illness". Cooper had given counsel statement previous to June 26, 2003 stating that he had not intentionally caused injury to plaintiff Jones.

Investigatigation of facts. After having listened to the clients story, counsel must check those "facts" and must interview witnesses, verify the charges, assertions and statements of the client, examine relevant documents and attend to many other similar matters. This has been refered to as marshalling the evidence.

On September 30, 2003 in court room number 4-E at 10:15 a.m. the proceedings of trial had started against the defendant. It is clearly supported on the record that the court was made aware of defendants on-going adversities with counsel. (see exhibit B-1 sheet 1 frame 2 lines 16 thru 23) "Mr. Cooper, I have spoken with attorney Edinger on several occassions and he does'nt seem to be acting in my best interest in terms of trying to put together some sort of defense for me. I'm of the opinion that if you can be accused of something, there must be some sort of defense that can be used even if it's not effective".

(see exhibit B-1 sheet 1 frame 3 lines 4 thru 6) "Mr. Cooper quoting Mr. Edinger " you're going to get 20 years to life and thats it, there's nothing that can be done" "Mr. Cooper, I don't understand that ". (see exhibit B-1 sheet 2 frame 6 lines 14 thru 23) "Mr. Cooper, I've been asking this attorney for a lot of months I mean, it's not my fault that he waits until the last minute to decide that he is or is not going to withdraw from the case. I've done everything I could, I've written him letters,

48

and your Honor, I mean, I can't be responsible for him not withdrawing and waiting until this last date. I mean, I've been trying the longest time, so it should have been resolved".

(see exhibit B-1 sheet 2 frame 8 lines 16 thru 19) "Mr. Cooper, but he does'nt intend to do anything from what he's telling me, because there's nothing that he's going to do nothing at all. I don't understand that--".

(see exhibit B-1 sheet 3 frame 9 lines 7&8) "Mr. Cooper, and he's telling me it's something about a felony that did'nt occur--".

(see exhibit B-1 sheet 3 frame 10 lines 11 thru 16) "Mr. Cooper, it does'nt, it does'nt change the fact that I don't want this man to defend me, because I don't believe that he will defend me. But there's nothing I can do about it according to you, your Honor, so l'll just have to do whatever your decision is ". It is evidenced by the record that defendant and counsel were experiencing a breakdown in communications, at the outset of the plea colloquy regarding counsels failure to prepare any defense.

The comments made by the court, (see exhibit B-1 sheet 2 frame 7 lines 1 thru 6) " The Court: well the point is that whether this had been raised last week or six months ago, if your request is a different attorney just because you're not satisfied with his response to the charges against you, thats not a sufficient basis for having him removed".

It was judicial abuse where the court failed, by it's lack of examination to determine more precisely what the deficiency was in representation alluded to by the defendant, i.e. failure to investigate,

49

and provide a defense. To merely suppose that counsel had prepared a
defense without determining whether defendants contentions had merit,
amounted to court disregard for defendants right of due process and pro-
tection of the law. Rights gauranteed under the Fourteenth U.S. Constitu-
tional Amendment. (see exhibit C-3 where defendant was attempting to file
a complaint in the hope of getting relief regarding counsels, failure to
maintain contact with defendant about what defense was being prepared

Due process of law not only requires that accused charged in State
Court with serious crime and unable to defend himself shall have benefit
of counsel, but it is denial of accused Constitutional right to fair trial
to force him to trial with such expedition as to deprive him of effective
aid and assistance of counsel. U.S.C.A., Constitutional Amendment Fourteen,
see White v Rager, 65 S. Ct. 978, 324 U.S. 760 (1945). The court had a oblig
ation imposed by the Sixth and Fourteenth Constitutional Amendments, to
stop the proceedings in order to better determine the merits of defendants
repeated complaints regarding counsels lack of trial preparations. A judge
conducting a trial must, despite his suspicions as to defendants motives,
at all times make certain that he has protected the defendants Constitu-
tional rights. It is true that, there is no absolute right to a particular
counsel, and that in order to warrant a substitution of counsel during
trial, the defendant must show good cause such as conflict of interest,
a complete breakdown in communication or an irreconcilable conflict with
his lawyer inter alia.

In the instant case, the record reveals no inquiry by the court as
to the reasons for defendants dissatisfaction with his assigned counsel
United States v Welty, 674 F 2d 185 (3rd Cir. 1982)

A trial court must first decide whether defendants request for new counsel, on the eve of trial, is substantial enough to justify a continuence of the trial in order to allow the defendant to obtain new counsel. United States v Welty, 674 F 2d at 188, If after making appropriate inquiries, the trial court determines that the defendant has not shown good cause for a substitution of counsel, it may properly insist that the defendant choose between representation by his existing counsel and proceeding Pro se. It is vital that the trial court take particular pains in discharging its responsibility to conduct these inquiries concerning substitution of counsel and perfunctory questioning is not sufficient. Id. at 187.

The first step of the analysis required by Welty, supra, is to determine whether the trial court made sufficient inquiry into the reasons for defendants dissatisfaction with his attorney on the eve of trial. Id. In the instant case, the trial court did not make a sufficient inquiry into defendants allegations of counsels lack of preparation for his defense, in order to dispel or affirm defendants contentions. Therefore the record reflects that the trial judge denied defendants request for new counsel. Briscoe v State, Del. Supr., 606 A 2d 103 (1992).

Defendant further contends that the court abused its discretion where, (see exhibit B-1 sheet 3 frame 10 lines 17,18,19,) "The Court; okay well I'm going to require that you permit him to represent you. and I urge you to give him your very best cooperation". This command to the defendant by the court, was imposed without any inquiry or considerations by the court into the defendants allegations of counsels lack of defense preparation.

(see exhibit B-1 sheet 3 frame 12 lines 1 thru 9) "The Court; so
you talk to him during the course of the trial and if there's anything that
he thinks will be of assistance to you, I'm sure he'll follow up on it.
If he does'nt, then we have a procedure after the trial called ineffective
assistance of counsel. But I can't assume here in the beginning that his
assistance will be ineffective because you're not comfortable with him!"

This above statement by the court demonstrates that essentially
the court, without concern for protecting the defendants Constitutional
rights of due process and protection of the law, made up its mind to place
defendant in a position of having to overcome the future presumption by
the court, that counsel had made the best decision pertaining to defendants
case based on the best strategically available choice at the time., and
further placed the defendant in the extremely tenuous position of proving
that the instant rule 61 challenge is not tendered on hindsight or some
other frivolous rationale of convience inappropriately arrived at by this
defendant.

Having counsel who had prepared no defense for him, being denied
a remedy by the court, ( the only source remaining to address his complaint
regarding counsels lack of defensive  preparation) the defendant was left
being hopelessly defeated, therein making his entering a plea of guilty
a matter to be questioned by this court.(see exhibit B-1 sheet 3 frame
10 lines 13 thru 16) "Mr. Cooper, I don't believe that he will defend
me, but there's nothing I can do about it according to you, your Honor,
so i'll just have to do whatever your decision is".

Had the court held a fact finding hearing regarding defendants allegations that counsel had failed to prepare any defense on his be-half, the court would have discovered that there existed no documenta-tion of 'any' type, strategic or otherwise, defensive preparations by counsel. The court would have discovered that beyond informing defendant of the plea bargaining procedures, defendant recieved no documented in-formation, (or oral equivalent) regarding any of his rights, legal pro-cedures or any revelant defense possibilities available to him.

Based on the aforementioned facts, the defendant believes that, had the court been aware as a matter of fact, that these conditions ex-isted in the defendants case, the court would surely have appointed to him substitute counsel, whereby it is reasonable to conclude, based on the available untaped evidence not developed by counsel, the outcome of de-fendants trial would have been substantially different as to the sentence that was imposed.

Further, the courts summary denial of defendants motion for sub-stitute counsel, had the far reaching prejudicial effect of precluding effective assistance of counsel because defendant could not demonstrate his lessened culpability, and equally important, the courts denial placed the defendant in the extremely precarious position of Pro-se defense, where defendant is further prejudiced by not being a trained qualified litigator.(see exhibit B-1 sheet 2 frame 6 lines 11 thru 14)
" The Court; are you suggesting that you want to represent yourself?"
" Mr. Cooper; Your Honor, I'm not capable of representing myself."

It is inconceivable that the court would purposefully inflict such an insurmountable burden of proof on the defendant, where, had the court allowed substitution of counsel, the burden of proof would have rightfully been placed on the state, of proving defendant intentionally caused injury to Jones. A proof that could not have been substantiated by the facts of the case.

Defendant made a prima facie showing of, a complete breakdown of communications between counsel and defendant regarding counsels failure to provide defendant with any defense. It should be noted that, these allegations made against counsel, were not disputed prior to during or after court intervention into the concern, of defendant. The court summarily dismissed defendants motion for substitute counsel. The consequence of this denial was that, the defendant was forced into a plea with the forced acceptance of a particular lawyer with whom he could not communicate, whom he was dissatisfied with based on this lack of common ground communications. Thus the defendant was positioned with a attorney deprived of the power to present a adequate defense, because this attorney prepared no defense on behalf of his client.

Defendants dispute was not based on frivolous grounds, as was apparently concluded by the court. Defendant was not at odds with counsel based on a disagreement pertaining to a particular defensive strategy proffered for defendants consideration but rather was, the direct results of counsels failure to be responsive to defendants needs for a defense, i.e. securing potential evidence and witnesses for trial preparations.

54

The standard that defendant is applying to determine whether there
has been an abuse of discretion is drawn from, U.S. v Mills, 597 F 2d
693, 700 (9th Cir. 1979). A case in which a defendant sort substitute
appointed counsel, for another appointed counsel. The governing factor
in Mills supra were, [1] the timeliness of the motion to dismiss counsel,
[2] the adequacy of the courts inquiery into defendants complaint and
[3] whether the conflict was so great as to result in a lack of communica-
tions regarding an adequate defense.

In the instant case, the court did not discuss the lack of timeliness
as to any real or potential adverse effects defendant Coopers motion
would have on the court, state or case, nor did the court indicate that
timeliness was a factor in not holding a fact finding hearing to deter-
mine if defendants allegations had merit. The court denied defendants
motion after concluding that if counsel was inadequate and defendant was
incapable of self representation, then it would be a matter for discussion
after trial. (see exhibit B-1 sheet 2 frames 5,6,7 * 8) (see exhibit B-1
sheet 2 frame 8 lines 8 thru 15 "The Court! " (see also exhibit B-1 sheet
2 frame 8 lines 16 thru 19) "Mr. Coopers response")

Clearly defendants response, " but he does'nt intend to do anything,
from what he's telling me," should have alerted the court to the fact that,
yes, there was no way for the court to know in advance whether counsel
would present adequate representation, but the one individual that should
have known of any defense, (Cooper) was telling the court that no defense
was forthcoming as far as he had been informed. Sufficient grounds, the
defendant believes for a fact finding hearing, considering the possible
sentence for a finding by the court, of guilty as charged.

It is therefore this defendants respectful request that this court vacate his 14 year sentence and remand his case for a more appropriate sentence based on ineffective assistance of counsel.

IV.    ABUSE OF DISCRETION AT SENTENCE

Standard and Scope of Review

In a proceeding instituted by an application for a writ of habeas corpus by application for a writ of habeas by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

GROUND FOUR

Abuse of discretion by court at the sentencing phase of defendants case

On November 21, 2003 before the Honorable John E. Babiarz court room 4 [A] Mr. Edinger is addressing the court, (see exhibit B-2 frame 3 lines 10 thru 23, frame 4, lines 5,6,7, respectively.

It is of interest to note that in frame 5, defense counsel for the first time offers to the court an explanation of what happened between the defendant and the victim on January 29, 2003.

(see exhibit B-2 frame 5 lines 9 thru 17)

"(9) apparently the victims brother told him to

(10) get lost, get the hell out of here when he did show

(11) up, and the fight between-- that initially started

(12) between him and the victims brother and Mr. Cooper

(13) produced the knives, the victim in this case

(14) Ms. Jones interceded and Mr. Cooper stabbed her.

(15) I don't think his intent was to kill her

(16) to harm her, but in his drug induced frenzy of

(17) activity, he stabbed her,

Then in frame 7 lines 6 thru 10 counsel negates any possible mitigatin impact of his previous statements and becomes essentially the prosecution by stating in part..."Mr. Edinger, (6) this could have been a murder case (9) but she could have easily died, (10) by his actions of producing these knives".

This is not by Strickland standards a harmless error, but such a violation that it denies the defendant his Constitutional gaurantees of

presenting his defense to the court. Counsel violated his responsibility and duty as an adversary for the defendant. The record reflects that there existed between counsel and the prosecution, not a mutual advesarial disposition, but rather a relationship to the detriment of defendants case. e.g., (see exhibit B-2 frame 6 lines 7 thru 11) "Mr. Edinger; none of this mitigates Mr. Coopers actions, and he has to be punished for that. The only reason I even bring this up is because I think the presentence report is a little sparse on the details of what actually occurred".

(see exhibit B-2 frame 8 lines 11,12)"Mr. Roberts; I agree with Mr. Edinger that the evidence is a little sparse".

(see exhibit B-2 frame 4&5 lines 22, 23, & 1,2 respectively) "Mr. Edinger; this relationship that had been on and off, obviously violence being involved, in that the victim had sought and obtained a no contact order, which Mr. Cooper was in violation of at the time".

(see exhibit B-2 frame 8 lines 12 thru 17) "Mr. Roberts; and the evidence that the State would present at trial would be that Mr. Cooper was stalking this victim for some time. There were pending charges in various courts for him harrassing her. There was a no contact order as the court is aware, at the time of this incident".

(see exhibit B-2 frame 7 lines 19,20,21,) "Mr. Edinger; my under-standing is the States going to be asking for a significant amount of jail time on these charges".

(see exhibit B-2 frame 10 lines 4 thru 9 ) "Mr. Roberts, the states recommendation is that Mr. Cooper be sentenced to 25 years, suspended after 15 years for various levels of probation: that he be required to undergo domestic violence counseling, substance abuse treatment and have no contact with Ms. Jones.

The performance of counsel and prosecution is reminiscent of a choreographed echo, where counsel starts the attack on the defendant and prosecution completes the mangling. The unreasonable performance by counsel prejudiced defendant by meeting the requirements of rule 61 (i)(3)(b) showing <u>cause</u> why this petition should be granted and this defendant should be afforded the opportunity to have his plea withdrawn and his sentence set aside.

It is further worth noting that neither counsel nor prosecution disclosed in open court during the plea colloquy, their understanding regarding the prosecutions sentencing recommendation (a material element of the case) nor did counsel file an objection to the prosecution introduction of " what it would have used at a trial held two months earlier". (see exhibit B-2 frame 8 lines 11 thru 17) Nor oddly enough did counsel object to the prosecutions statement, (see exhibit B-2 frames 9 & 10 lines 19 thru 23 and 1 & 2 respectively) "Mr. Roberts; the defendant also has in his background, and the state was'nt necessarily or we probably would have been filing a habitual petition about the disposition of the offenses in New Haven, Connecticut, where the '76' attempt of assault second a lesser included, and the '72' attempted murder, which pled down to an assault second".

Where during the plea colloquy, (see exhibit B-1 sheet 4 frame 13 lines 3, 10 thru 15) "Mr. Roberts; Mr. Cooper explained that he is not habitual. but I tracked the number, and the attempted murder, in fact shows up on the assault first. so that puts us in a different posture where he's not an habitual so I extended to Mr. Edinger a revised plea offer in light of that information".

(see exhibit B-1 sheet 4 frame 13 lines 19 thru 22) "The Court; the state has had an opportunity to review the very thing that was of concern to you, and that was, whether or not you were an habitual offender or eligible for that status".

The aforementioned record evidence succinctly confirms that counsel and prosecution were fully aware that the prosecutions statements regarding defendants habitual status were, at best, false and would have a prejudicial impact on the courts decision  during implimentation of defendants sentence. It is additionally, reflective of the courts failure to conduct a fact finding hearing during the plea colloquy, extending counsels continued ineffectiveness to the crucial sentencing phase of defendants case, where counsels unreasonable and prejudicial behavior, had the contributing effect of securing defendants 14 year prison sentence.

Counsels ineffective unreasonable professional representation is further evidenced, where counsel failed to read to the defendant or to allow the defendant to review the presentence investigation report, where counsel and prosecution agreed on the sparseness and confusion caused by the lack of clear information pertaining to defendants behavior on January 29, 2003 and other pertinent background  research. It was court abuse

where the sentencing judge failed to determine whether defendant had read the presentence report or discussed it with counsel. It is also judicial abuse where court refused to allow defendant to explain document errors, (see exhibit B-2 frame 13 lines 9 thru 12) "Mr. Cooper; one last item, in the court docket from Connecticut as well as from Delaware that if the court desires, I will explain what the errors are." The courts refusal to allow defendant to explain what the errors were, prejudiced defendants case by violating defendants Sixth U.S. Constitutional right to effective assistance of counsel and his Fourteenth U.S. Constitutional right of due process and protection of the law.

Sentencing judge failure to determine whether defendant had read presentence report or discussed it with counsel, was prejudicial error. Defense counsel made no specific objection to any fact in presentence report and defendant could not have tried to contradict reports factual finding because, he was not given opportunity to read or discuss it. U.S. v Sustaita, 1F. 3d 950 (9th Cir. 1993)

On November 21, 2003 before the Honorable John E. Babiarz, the defendant was sentenced to a period of 10 years on the charge of assault in the first degree suspended after serving 4 years for 2 years level 3 probation. Possession of a deadly weapon during the commission of a felony 4 years level 5 incarceration, for a total of 14 years respectively.

The court abused its discretion where the court failed to carry out a legislative mandate incorporated into law under title 11 § 4204 (N) which states:

62

(N) whenever a court imposes a sentence inconsistent with the pre-
sumptive sentences adopted by the sentencing accountability commission,
such court shall set forth on the record its reasons for imposing such
penalty.

The courts use as a aggravating factor, the fact that defendant
was " on probation" at the time of the offense as justification for
sentence enhancement is in violation of title 11 § 4204 (N) which was
put in place as a safe guard of insuring that the courts provided
adequate reasons that the court had found, for sentence enhancement,
which when not carried out as intended, violates  the Sixth and Four-
teenth Amendments of the United States Constitution and article 7 of
the Delaware State Constitution, by not informing the defendant of all
the charges or penalties that would be imposed at defendants sentencing.

In the instant case it is clear to the defendant that prior
convictions were not presented nor were they made part of any court
proceedings to the defendants knowledge or that he was made aware of.
If being on probation were used in computing the sentencing range of
the underlining crime (apparently the case) which in this case was
assault in the first degree and possession of a deadly weapon during
the commission of a felony, the court would by State law;

Title 11 § 4215; sentence of a greater punishment
because of previous convictions.

allow the defendant to either admit or deny such previous con-
viction or convictions before a court could impose a greater punish-
ment of the crime. Furthermore, if the facts were not a prior convic-
tion, then there would be an underlining violation, in that the sen-
tencing court relied on facts that would constitute a violation

of defendants Sixth Constitutional Amendment rights.

It is evident by the sentencing record that cousels performance was a unreasonable display of ineffective assistance for defendant. Counsels professional demeanor  without the implimentation of zealous adversarial skills in advocacy of counsels client. Counsels failure to provide mitigating evidence and challenging prosecutorial mislead-ing of the court, had the depleting effect of closing the courts mind. Had counsel truly believed, (as he stated) that the defendant had not intended to harm Jones, with intent being a material element in the crime, counsel would have would have prepared a defense based on lack of intent, provided mitigating evidence at sentencing and provided a concrete test of the adversarial process.

The court, noting the failure of counsel to present any of these essential defensive  elemental postures on his clients behalf in ad-dition to counsels attacks upon defendant, placed the court in the position of pre-determining its sentence decision, long before the sentencing hearing was concluded, as can be observed by the court not even taking a few minutes break, to consider what sentence was most applicable.

Based on the afore mentioned facts contained within ground four, the defendant request that this court vacate and remand defendants case for resentencing.

Therefore, defendant states that he has effectively established a sufficient showing of actual and substantial prejudice resulting from counsels acts which questions the validity of the acceptance of the plea offer, as to whether it was knowingly and voluntarily made.

Defendant further maintains that counsels representation fell below an objective standard of reasonableness and there is a reasonable probability that but for counsels error he would not have plead guilty.

Based on the above provided evidence, the defendant is respectfully requesting that this court vacate the imposed sentence of 14 years and remand defendants case for re-sentencing on the charge of assault 2nd degree 0 to 2 years and for the charge of possession of a deadly weapon during the commission of a felony, 2 years mandatory minimum.

## CONCLUSION

The defendant readily accepts the responsibility for the injury caused by him to Jones. It was not his intention. Substance addiction was the motivating factor that placed the defendant at the scene of the January 29, 2003 incident. It is not counsels fault, prosecutions fault or the Courts fault that the defendant found himself entangled in litigation. The defendant clearly understands this fact. It is equally clear that once the defendant became involved in the legal proceedings, his fate became the responsibility of others. In this case, counsel, prosecution and the court. To the defendants knowledge, there exist no laws that could have gauranteed the outcome of his case. There are laws however, that gauarantee, that a due process must be afforded to all parties engaged in litigation in the attempt at arriving at a

fair and balanced resolution. The Sixth and Fourteenth Amendments to the United States Constitution. Counsels cumulative errors had the overwhelming effect of voiding this gauranteed process. Based on the factual information contained in defendants rule 61 motion for relief, this defendant respectfully requests this court to vacate defendants 14 year sentence imposition, and remand his case for a evidentiary hearing, resentencing or what the court may find to be a more appropriate disposition.