# UNITED STATES DISTRICT COURT

# DISTRICT OF DELAWARE

ANTHONY A. COOPER,    )
          )
  Petitioner,     )
          )
v.          )  Civ. Action No.
          )
THOMAS CARROLL, Warden,  )
And Carl C. Danberg, Attorney )
General of the State of Delaware, )
          )
  Respondent.    )  0 6 - 3 9 6

---

## MEMORANDUM OF LAW IN SUPPORT OF PETITION UNDER 28 U.S.C. § 2254 FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

---

APPENDIX



FILED

JUN 20 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

R2 Scanned

*Anthony Cooper*
Anthony Cooper#00275064
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dated: *June 15, 2006*

Table of Contents                              Page

Exhibits

A.1-- Letter from Supreme Court advising counsel of his continued duty.    1

A.2-- Motion to withdraw by counsel to Supreme Court.                      2

A.3-- Police report.                                                      3,6

A.4-- Competency evaluation by, Delaware Health and Social Services. 7,13

A.5-- Psychiatric admission assessment, Christiana Hospital.            14,21

A.6-- Letter, First Correctional Mental Health Unit.                      22

A.7-- Plea agreement.                                                     23

B.1-- Plea colloquy transcript.                                         24,29

B.2-- Sentencing hearing transcript.                                    30,33

B.3-- Introduction letter from counsel.                                 34,35

C.1-- Response letter to counsel regarding 6/26/03 interview.           36,38

C.3-- Letter from office of Disciplinary Counsel.                       39,40

C.4-- Sentencing Order.                                                 41,45

SUPREME COURT OF DELAWARE

CATHY L. HOWARD
*Clerk*

AUDREY F. BACINO
*Assistant Clerk*

DEBORAH L. WEBB
*Chief Deputy Clerk*

LISA A. SEMANS
*Senior Court Clerk*

#3

SUPREME COURT BUILDING
55 THE GREEN
P.O. BOX 476
DOVER, DE 19903

(302) 739-4155

December 19, 2003

John S. Edinger, Esquire
Assistant Public Defender
Carvel State Office Building
820 N. French Street
Wilmington, Delaware 19801

      RE:   *Anthony A. Cooper v. State*
           No. 604, 2003
           (Cr. ID No. 0301018775; Cr. A. No. IN03-02-0136)

Dear Mr. Edinger:

On December 19, 2003, Anthony Ashley Cooper filed a Notice of Appeal from the Superior Court's sentence of November 21, 2003, in the above-captioned matter. A copy of Mr. Cooper's Notice of Appeal and Directions to Court Reporter are attached for your review.

It appears that you represented Mr. Cooper in this matter. Therefore, the Court requests you to file a written statement on or before **December 29, 2003,** indicating that you recognize your continuing obligation under Supreme Court Rule 26(a) to represent Mr. Cooper in the captioned appeal. Please include with your statement a formal notice of appeal and directions to the court reporter, if appropriate.

           Very truly yours,

           Audrey F. Bacino

Enclosure

cc:   Mr. Anthony A. Cooper
      Loren C. Meyers, Esquire (with copy of Notice of Appeal and Directions
      Ms. Sharon Agnew, Prothonotary (with copy of Notice of Appeal and Directions)

*Exhibit - A-1*

pg-1

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| ANTHONY COOPER, | ) |
| | ) |
| Defendant Below, | ) |
| Appellant, | ) |
| | ) |
| v. | )    No. 604, 2003 |
| | ) |
| STATE OF DELAWARE | ) |
| | ) |
| Plaintiff Below, | ) |
| Appellee. | ) |

## MOTION TO WITHDRAW AS COUNSEL

JOHN S. EDINGER, JR., ESQUIRE, attorney for Appellant, hereby moves pursuant to Supreme Court Rule 26(c) that this Honorable Court grant him leave to withdraw as counsel. Counsel states that he has made a conscientious examination of the record and the law and concludes that an appeal is wholly without merit.

WHEREFORE, counsel requests that the Court allow him to withdraw.

_____
John S. Edinger, Jr., Esquire
Assistant Public Defender
820 North French Street
Wilmington, DE 19801

Dated:  April 8, 2004

## ORDER

SO ORDERED this _____ day of _____, 2004.


_____
JUSTICE


Exhibit A-2

pg. 2

## Victim Information

| Victim Number | | | | |
|---|---|---|---|---|
| 003 Continued | | | | |

| Address | Resident Status | Home Telephone | Employer/School | Work Telephone |
|---|---|---|---|---|
| 003 Continued | | | | |

| Reporting Person? | Victim Injured? | Victim Deceased? | Officer Comments |
|---|---|---|---|
| ☐ Yes ☒ No | ☐ Yes ☒ No | ☐ Yes ☒ No | |

| Injuries | Description of Injuries |
|---|---|
| | |

## Suspect/Defendant Information

| Sequence | Type | SBI Number | Name | | Nick Name |
|---|---|---|---|---|---|
| 001 | Suspect | 00275064 | COOPER, ANTHONY A J | | |

| Sex | Race | Ethnic Origin | Age | D.O.B. | Height | Weight | Skin Tone | Eye Color |
|---|---|---|---|---|---|---|---|---|
| Male | Black | Non-Hispanic | 54 | 08/11/1948 | 5' 09" | 150 | Dark | Brown |

| Hair Color | Hair Length | Hair Style | Facial Hair | Voice Speech | Teeth | Build | Glasses |
|---|---|---|---|---|---|---|---|
| Black | | | | | | | |

| Disguise | Disguise Color(s) | Resident Status | Unusual Characteristics | Armed With |
|---|---|---|---|---|
| | | Full Time | | Illegal Cutting Instrument |

| Address | Home Telephone | Employer/School | Work Telephone |
|---|---|---|---|
| 2412 N MARKET ST APT 205 WILMINGTON, DE 19802 | (302) 777-5857 | TACO BELL | |

| Arrest Number | Suspect's Clothing Description |
|---|---|
| | |

## Crimes and Associated Information

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 001 | 003 | DE:11:0613:00A1:F:C | Assault First Degree-Intentional Serious Injury-Weapon Dangerous Instrument |

| Location Type | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley | Pending-Active | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 13234B - Aggravated Assault/Non-Family Knife/Cutting Instrument |

| Burglary Force Involved | Weapon/Force Used | Assault Factor |
|---|---|---|
| ☐ Yes ☐ No | Knife/Cutting Instrument | Other Felony Involved |

| M.O. Information | MO Class | MO Description |
|---|---|---|
| | Means of Attack | Knife |

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 001 | 005 | DE:11:0621:00A1:M:A | Terroristic Threatening |

| Location Type | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley | Pending-Active | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 13234B - Aggravated Assault/Non-Family Knife/Cutting Instrument |

| Burglary Force Involved | Weapon/Force Used | Assault Factor |
|---|---|---|
| ☐ Yes ☐ No | Knife/Cutting Instrument | Other Felony Involved |

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 002 | 004 | DE:11:0602:000B:F:E | Aggravated Menacing |

| Location Type | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley | Pending-Active | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 13234B - Aggravated Assault/Non-Family Knife/Cutting Instrument |

| Burglary Force Involved | Weapon/Force Used | Assault Factor |
|---|---|---|
| ☐ Yes ☐ No | Knife/Cutting Instrument | Argument |

| M.O. Information | MO Class | MO Description |
|---|---|---|
| | Means of Attack | Knife |

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 002 | 006 | DE:11:0621:00A1:M:A | Terroristic Threatening |

| Location Type | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley | Pending-Active | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 13234B - Aggravated Assault/Non-Family Knife/Cutting Instrument |

| Burglary Force Involved | Weapon/Force Used | Assault Factor |
|---|---|---|
| ☐ Yes ☐ No | Knife/Cutting Instrument | Other Felony Involved |

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 003 | 001 | DE:11:1447:0000:F:B | Possession of a Deadly Weapon During the Commission of a Felony |

| Location Type | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley | Pending-Active | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐ Yes ☒ No - N/A | 5212 - Possession of Weapon |

| Burglary Force Involved | Criminal Activity | Weapon/Force Used |
|---|---|---|
| ☐ Yes ☐ No | Possessing/Concealing | Knife/Cutting Instrument |

| Evidence Information | Evidence Type | Date Collected | Time Collected | Collected By |
|---|---|---|---|---|
| | Other Items | 01/29/2003 | 0330 | HARRISON |

| Reporting Officer | Supervisor Approval |
|---|---|
| CPL SNYDER - 6291 2 | MARK C LEMON OJWIMCL Date 02/12/2003 2156 |

ExhiBit A-3

pg-3

## Domestic Incident Report

Reported Date and Time
WED 01/29/2003  0303

Occurred:
WED  01/29/2003  0300

Location:
209 W 24TH ST    Wilmington, DE 19802

M.O. and Incident Overview:
LISTED DEF. APPROACHED THE VICTIMS AS THEY WERE SEATED IN A VEHICLE, AND PROCEEDED TO STAB THE FEMALE VICTIM IN THE CHEST AREA, AND LEFT HAND AS SHE SAT IN THE FRONT PASSENGERS SEAT OF THE VEHICLE.

| Grid 222-222 | Sector 14 | County New Castle | Domestic Related [X]Yes [ ]No | 4-F-14 Sent? [ ]Yes [X]No | | Gen Broadcast Sent? [ ]Yes [X]No |
|---|---|---|---|---|---|---|

| Risk Assessment Done? [X]Yes [ ]No [ ]N/A | Any Children Present? [ ]Yes [X]No | Juvenile Residents [ ]Yes [ ]No | Intimate Relationship [X]Yes [ ]No | Extended Reason for call |
|---|---|---|---|---|

| Active with Family Services? Caseworker Name [ ]Yes [ ]No | | Complainant in Other case? [ ]Yes [ ]No | Agency |
|---|---|---|---|

| Victim Reported Prior Incident? [ ]Yes [ ]No | Violent Activity? [X]Yes [ ]No | Was DFS Notified? [ ]Yes [X]No | DFS Caseworker Notified | Was a Dual Arrest Made? [ ]Yes [X]No |
|---|---|---|---|---|

| Court Orders Active? [X]Yes [ ]No | Active Orders No Contact | Order Description |
|---|---|---|

| [ ] Arrest Made | [ ] No Arrest Made | [ ] Suspect GOA | [ ] No Crime | [X] Warrant Pending | [ ] Other |
|---|---|---|---|---|---|

## Victim Information

Victim Number
001

| Type | Sex | Race | Ethnic Origin | D.O.B |
|---|---|---|---|---|

| Address | | Resident Status | Home Telephone | Employer/School | | Work Telephone |
|---|---|---|---|---|---|---|

| Reporting Person? [ ]Yes [X]No | Victim Injured? [X]Yes [ ]No | Victim Deceased? [ ]Yes [X]No | Officer Comments |
|---|---|---|---|

Injuries
Possible Internal Injury
Severe Laceration

Description of Injuries

### Risk Assessment

- [ ] 1. Gun present in the home or accessible to the suspect
- [X] 2. Suspect has used or threatened to use a weapon
- [ ] 3. Parties had a recent separation or threatened separation
- [X] 4. Suspect abuses alcohol
- [ ] 5. Suspect uses illegal drugs or abuses legal drugs
- [ ] 6. Increase in frequency or severity of violence
- [ ] 7. Suspect is violent outside the relationship
- [ ] 8. Suspect has destroyed cherished personal items
- [ ] 9. Suspect is jealous or attempts to control partner
- [ ] 10. Suspect has accused the victim of cheating
- [ ] 11. Suspect has said, "if I can't have you, no one can."
- [X] 12. Suspect threatens to kill
- [ ] 13. Suspect contemplated, threatened, or attempted suicide
- [ ] 14. Suspect violent toward children
- [ ] 15. Suspect has injured or killed pets
- [ ] 16. Suspect has forced victim to have sex when victim did not agree
- [ ] 17. Suspect has directed violence toward pregnant partner
- [ ] 18. Victim is currently pregnant
- [ ] 19. Victim contemplated, threatened, or attempted suicide
- [ ] 20. Suspect has mental health history
- [X] 21. Has either party recently filed for a PFA/divorce/other legal filings

Alternate Telephone
(302) 652-2185

| Victim Number | Name |
|---|---|

| Type | Sex | Race | Ethnic Origin | D.O.B. |
|---|---|---|---|---|

| Address | | Resident Status | Home Telephone | Employer/School | | Work Telephone |
|---|---|---|---|---|---|---|

| Reporting Person? [ ]Yes [ ]No | Victim Injured? [ ]Yes [X]No | Victim Deceased? [ ]Yes [X]No | Officer Comments |
|---|---|---|---|

| Injuries | Description of Injuries |
|---|---|

Victim Number
003

Name

| Type Society/Public | Sex | Race | Ethnic Origin | Age | D.O.B. |
|---|---|---|---|---|---|

| Reporting Officer CPL SNYDER  - 6291 2 | Supervisor Approval MARK C LEMON OJWIMCL Date 02/12/2003 2156 |
|---|---|

P.9-4

## Crimes and Associated Information

| Address | | Other Location | | | |
|---|---|---|---|---|---|
| 299 W 24TH ST Wilmington | | | | | |

| Type of Processing | | | Disposition | | |
|---|---|---|---|---|---|
| | | | TOT EDU. | | |

| Description | | | | | |
|---|---|---|---|---|---|
| 2 STEAK KNIVES WITH WOODEN HANDLES. | | | | | |

| Item Style | Item Type | Serial Number | Brand | Model | Item Type |
|---|---|---|---|---|---|
| | | | | | |

| Victim Number | Crime Seq | Statute | Crime Description | |
|---|---|---|---|---|
| 003 | 002 | DE:11:1447:0000:F:B | Possession of a Deadly Weapon During the Commission of a Felony | |

| Location Type | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley | Pending-Active | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code | |
|---|---|---|
| ☐ Yes ☒ No - N/A | 5212 - Possession of Weapon | |

| Burglary Force Involved | Criminal Activity | Weapon/Force Used |
|---|---|---|
| ☐ Yes ☐ No | Possessing/Concealing | Knife/Cutting Instrument |

| Evidence Information | Evidence Type | Date Collected | Time Collected | Collected By |
|---|---|---|---|---|
| | Other Items | 01/29/2003 | 0330 | HARRISON |

| Address | | Other Location | |
|---|---|---|---|
| 299 W 24TH ST Wilmington | | | |

| Type of Processing | | Disposition | |
|---|---|---|---|
| | | TOT EDU | |

| Description | | | |
|---|---|---|---|
| 2 STEAK KNIVES WITH WOODEN HANDLES. | | | |

| Item Style | Item Type | Serial Number | Brand | Model | Item Type |
|---|---|---|---|---|---|
| | | | | | |

| Victim Number | Crime Seq | Statute | Crime Description | |
|---|---|---|---|---|
| 003 | 007 | DE:11:2113:00C2:M: | Breach of Release | |

| Location Type | Status | Involvement | General Offense |
|---|---|---|---|
| Highway/Roadway/Alley | Pending-Active | ☐ Alcohol ☐ Drugs ☐ Computer | |

| Suspected Hate/Bias | Crime Code | |
|---|---|---|
| ☐ Yes ☒ No - N/A | 5013 - Conditional Release Violation | |

| Burglary Force Involved | |
|---|---|
| ☐ Yes ☐ No | |

## Victim - Suspect/Defendant Relationships

| Victim - 001 | Suspect/Defendant - 001 | Victim Offender Relationship |
|---|---|---|
| ███████ | COOPER, ANTHONY A J | Boyfriend/Girlfriend |
| Victim - 002 ███████ | COOPER, ANTHONY A J | Acquaintance |
| Victim - 003 Society/Public | COOPER, ANTHONY A J | Victimless Crime |

## Witness Information

| Sequence | Type | Name | Sex | Race | Age | D.O.B |
|---|---|---|---|---|---|---|
| 001 | | ███████ | ███ | ███ | ██ | ██ |

| Address | Home Telephone | Employer/School | Work Telephone |
|---|---|---|---|
| ███████ | ███████ | | ███████ |

## Investigative Narrative

THESE OFFICERS (SNYDER & MULLIN) RESPONDED TO 211 WEST 24TH STREET IN REGARDS TO A CUTTING. UPON ARRIVAL, THESE OFFICERS SPOKE WITH V-2 ████ WHO ADVISED THAT AT THE ABOVE LISTED DATE AND TIME OF OCCURRENCE, HE, ALONG WITH HIS SISTER V-1 ████ WERE ENTERING HIS 1998 TOYOTA CAMRY (WHITE) BEARING DE. REG. 222050, WHICH WAS PARKED IN THE 200 BLOCK OF WEST 24TH STREET (NORTH SIDE OF THE STREET). V-2 ████ ADVISED THAT HE HAD ENTERED THE FRONT DRIVERS SEAT, WHILE HIS SISTER, V-1 ████ ENTERED THE FRONT PASSENGERS SEAT. V-1 ████ STATES THAT AS HE WAS ATTEMPTING TO START HIS VEHICLE, HE OBSERVED THE SUSPECT (COOPER, ANTHONY) APPROACH THE FRONT PASSENGER DOOR OF HIS VEHICLE, BRANDISHING 2 STEAK KNIVES SCREAMING "I'M GOING TO FUCKEN KILL YOU BITCH". V-2 ████ STATES THAT HIS SISTERS DOOR WAS STILL OPEN AS THE SUSPECT APPROACHED HIS VEHICLE. V-2 ████ STATES THAT UPON OBSERVING THIS, HE EXITED HIS VEHICLE AND RAN AROUND TO THE FRONT PASSENGER DOOR, IN AN ATTEMPT TO GET THE SUSPECT (COOPER) AWAY FROM HIS SISTER. BUNTING STATES THAT AS HE WAS RUNNING AROUND THE VEHICLE, THE SUSPECT (COOPER) PROCEEDED TO STAB HIS SISTER WITH THE STEAK KNIVES IN HER UPPER BODY, AS SHE SAT IN THE FRONT PASSENGER SEAT OF HIS VEHICLE. UPON REACHING THE SUSPECT, ████ STATES THAT THE SUSPECT (COOPER) TURNED IN HIS DIRECTION, WAVING THE 2 STEAK KNIVES, AND STATING "I'M GOING TO FUCKEN KILL YOU TOO". ████ ADVISED THAT AT THIS TIME HE GRABBED THE SUSPECT, AND BEGAN FIGHTING WITH HIM. ████ FURTHER

| Reporting Officer | Supervisor Approval |
|---|---|
| CPL SNYDER - 6291 2 | MARK C LEMON OJWIMCL Date 02/12/2003 2156 |

P9-5

Investigative Narrative - Continued

ADVISED THAT IT WAS AT THIS TIME THAT W-1 ▮▮▮▮, WHO WAS STANDING ON THE FRONT PORCH OF ▮▮▮▮ ▮▮▮▮ STREET, AND OBSERVED THE INCIDENT TAKING PLACE, RAN DOWN OFF OF THE PORCH AND ALSO BEGAN TO ATTEMPT TO SUBDUE THE SUSPECT. V-2 ▮▮▮▮ STATES THAT DURING THE PHYSICAL ALTERCATION, HE REACHED DOWN ON THE SIDE WALK AND LOCATED A PIECE OF CONCRETE. ▮▮▮▮ STATES THAT HE WAS ABLE TO PICK UP THE PIECE OF CONCRETE AND PROCEEDED TO STRIKE THE SUSPECT IN THE HEAD AREA, WHICH CAUSED THE SUSPECT TO DROP THE KNIVES, AND FALL TO THE SIDE WALK. IT WAS AT THIS TIME THAT ASSISTING UNITS ARRIVED, AND WERE ABLE TO PLACE THE SUSPECT(COOPER) IN HANDCUFFS. THE ORIGINAL VICTIM V-1(▮▮▮▮) WAS LOCATED INSIDE OF HER MOTHERS HOUSE AT ▮▮▮▮ BLEEDING FROM LACERATIONS TO HER CHEST AREA, AS WELL AS FROM A PUNCTURE TYPE WOUND TO THE LEFT HAND AREA. THE VICTIM(▮▮▮▮) WAS ABLE TO TELL THIS OFFICER THAT SHE WAS STABBED BY HER EX-BOYFRIEND(COOPER, ANTHONY) AS SHE WAS SITTING IN HER BROTHERS CAR ATTEMPTING TO GET A RIDE HOME. APPARENTLY THE SUSPECT(COOPER) WAS OUTSIDE OF THE VICTIMS MOTHERS HOME, AND WAS AWARE THAT SHE WAS THERE, DUE TO THE FAMILY GETTING TOGETHER EARLIER IN THE DAY FOR A FUNERAL. THE VICTIM(▮▮▮▮) WAS TRANSPORTED TO THE CHRISTIANA HOSPITAL BY KEYSTONE AMBULANCE SUFFERING FROM NUMEROUS STAB WOUNDS. THE SUSPECT(COOPER) WAS ALSO TRANSPORTED TO THE CHRISTIANA HOSPITAL SUFFERING FROM HEAD TRAUMA WHICH OCCURRED DURING THE PHYSICAL ALTERCATION WITH V-2▮▮▮▮, AND W-1▮▮▮▮. TREATMENT FOR BOTH SUBJECTS WAS INCOMPLETE UPON THE COMPLETION OF THIS REPORT. THESE OFFICERS RESPONDED TO CENTRAL AND SIGNED WARRANTS FOR THE SUSPECT(COOPER, ANTHONY) FOR ASSAULT 1ST DEGREE, P.D.W.D.C.F., TERRORISTIC THREATENING, AS WELL AS VIOLATION OF A NO CONTACT ORDER, AGAINST V-1(▮▮▮▮). WARRANTS WERE ALSO SIGNED FOR THE SUSPECT(COOPER) FOR AGGRAVATED MENACING, P.D.W.D.C.F., AND TERRORISTIC THREATENING AGAINST V-2(▮▮▮▮). EDU WAS NOTIFIED AND CPL. ED HARRISON RESPONDED TO THE SCENE FOR PROCESSING, AS WELL AS EVIDENCE COLLECTION. IT SHOULD BENOTED THAT 2 STEAK KNIVES WERE LOCATED ON THE SIDE WALK APPROX. 3 FEET FROM THE PASSENGERS FRONT DOOR OF THE VEHICLE IN QUESTION. ON 11 FEB 03 THIS OFFICER SPOKE WITH DR.BRIAN LEVINE IN REGARDS TO V-1'S ▮▮▮▮ INJURIES. DR. LEVINE ADVISED THAT JONES REQUIRED 5 STITCHES TO CLOSE THE WOUNDS ON HER CHEST AREA. JONES ALSO UNDERWENT SURGERY ON 29 JAN 03 FOR THE STAB WOUND TO HER LEFT HAND. THE VICTIM(▮▮▮▮) SUFFERED TENDON, NERVE, AS WELL AS LIGAMENT DAMAGE TO HER LEFT HAND AS A RESULT OF THE STABBING. THE SURGERY WAS CONDUCTED BY DR.DANYO, WHO IS A HAND SPECIALIST, AND THE VICTIM ▮▮▮▮) WAS RELEASED FROM THE HOSPITAL ON 1 FEB 03. THE DEF.(COOPER) WAS TREATED BY DR.LEVINE FOR SCALP ABRASIONS, AS WELL AS FOR A SMALL CUT IN HIS UPPER LIP. THE DEF.(COOPER) WAS RELEASED TO THESE OFFICERS ON WED 29 JAN 03 AT 0740HRS, TRANSPORTED TO CENTRAL, AND BOOKED ON THE ABOVE MENTIONED CHARGES.

| Reporting Officer | Supervisor Approval | | |
|---|---|---|---|
| CPL SNYDER - 6291 2 | MARK C LEMON OJWIMCL Date 02/12/2003 2156 | | |
| Detective Notified | Referred To | | |
| Solvability Factors | Witness | M.O. | Trace Stolen Property | Suspect Named | Status |
| | Suspect Located | Suspect Described | Suspect Identified | Suspect Vehicle Identified | Has Follow Up |

Pg- 6

09/05/2003     09:39     MITCHELL BLGD → 95777849

NO.199   D001



DELAWARE HEALTH
AND SOCIAL SERVICES
DIVISION OF SUBSTANCE
ABUSE AND MENTAL HEALTH

DELAWARE PSYCHIATRIC CENTER

# Jane E. Mitchell Building
### Fax Machine: 255-4439

## Facsimile Cover Sheet

Date: 9-5-03

To: Dawn

From: Juanita

Re: Cooper

Fax Number: 577-7849

Phone Number: 255-9700

6 Pages + 1 page cover letter

Comments: _____

_____

_____

_____

_____

CONFIDENTIALITY NOTICE: This facsimile page and any accompanying page(s) is intended for the use of the individual or entry to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient you are hereby notified that any dissemination, distribution, or coping of this communication or the taking of any action in reliance to the contents of this information may be strictly prohibited. If you have received this facsimile in error please notify the above individual by phone immediately. Thank you.

Exhibit - A-4

pg.7

09/05/2003    09:39    MITCHELL BLGD → 95777849                                    NO.189   □□□:

## DELAWARE PSYCHIATRIC CENTER
## MITCHELL BUILDING
## MENTAL HEALTH EXAMINATION

**EXAMINEE:**  Anthony A. Cooper                    ID# 0301018775

**DATE OF BIRTH:**  08/11/1948
**DATE OF EXAMINATION:**  07/21/2003
**EXAMINER:**  Crista McDaniel, Psy.D.

### REASON FOR REFERRAL:

Mr. Cooper was referred for an evaluation to assess whether he is able to understand the nature of the proceedings against him, to give evidence in his own defense, or to instruct counsel in his behalf per the Order of the Honorable Richard R. Cooch In The Superior Court Of The State Of Delaware In And For New Castle County.

### NOTIFICATION:

Mr. Cooper was informed that this examination was being conducted per Court Order, and that a report would be sent to the Judge, the prosecutor, and the defense attorney. He was informed of the purpose of the examination and that there was is no confidentiality for such an examination. Mr. Harris was able to restate the purpose of the evaluation and agreed to proceed.

### RESOURCES REQUESTED:
Criminal History
Records from Delaware Psychiatric Center
Records from Child, Inc.
Client Interview Worksheet
Records for First Correctional Medical
Records from Wilmington Hospital
Records from Probation, Wilmington DE

### RESOURCES REVIEWED:
Criminal History
Client Interview Worksheet
Records for First Correctional Medical
Warrant A & B
Records from Delaware Psychiatric Center

### BACKGROUND HISTORY:

On or about the 29th of January 2003, Mr. Cooper is alleged to have intentionally caused serious physical injury to Sylvia D. Jones by puncturing her left hand and causing several lacerations to the chest. He is also alleged to have displayed two steak knives to Dwight P. Bunting causing him to fear imminent physical injury. Mr. Cooper is charged with two counts of Possession Of A Deadly Weapon During The Commission Of A Felony, Assault, First Degree-Intentional Serious Injury-Weapon Dangerous Instrument, and Aggravated menacing, Displaying What Appears To Be A Deadly Weapon.

pg - 8

## MENTAL STATUS:

Mr. Cooper is a 55-year-old African American male, who looked somewhat older than his stated age. Mr. Cooper had difficulty speaking, in that, he gasped for air between sentences. Despite his efforts to breathe, Mr. Cooper spoke fluently, sequentially, coherently, and his content was goal-directed. His attention and concentration were good. Mr. Cooper's hygiene and grooming appeared appropriate. His gross motor skills appeared intact, including gait, balance, and posture. No obvious difficulties in fine motor abilities and no evidence of tremors or serious coordination problems were observed. It was apparent that Mr. Cooper had a breathing problem that impacts his level of activity.

Mr. Cooper described his mood as "depressed." His mood and affect appeared congruent. His attitude was cooperative and he was relatively open about his situation. He denied homicidal ideations, but then corrected this, saying he had passing homicidal ideations, but denied having any homicidal intentions at this time. Mr. Cooper indicated that he has passing suicidal thoughts, but also indicated that he did not plan to act on these ideations at this time. Mr. Cooper denied any hallucinations or delusions, and none were elicited in the interview. He did say that when he drank, he saw "types of things drunk people see when they are drunk, but I still knew reality. Mr. Cooper said he has heard voices during periods of deep depression or when very intoxicated. He added, "They give me cause for concern, but they are not frightening." When asked about obsessional thoughts, Mr. Cooper said that he used to be almost obsessive about sexual acts with his former companion and with new companions. He noted that he compulsively cleans his apartment, washes his hands, and checks locks. When questioned, many of his behaviors, except for the sexual acts, fit more of a picture of perfectionistic tendencies rather than actual compulsive acts. Mr. Cooper denied any feeling of general paranoia.

Mr. Cooper said he is being treated with Paxil and Wellbutrin and explained that he feels more at ease. He said he used to "Drink to alleviate the pain." He also explained that he had undergone lung reduction surgery for emphysema and that the surgery had helped him breath. He explained that the emphysema caused "mobile interference." Mr. Cooper also explained that he was working through feelings of loss and grief, because of the death of an uncle on Thanksgiving, that he had a daughter that died as an adult, and the loss of his father and father-in-law. He said, "I don't know how I am handling it."

Mr. Cooper was oriented to person, place, and time. He was able to recall three out of three novel items immediately, but only one item spontaneously after five minutes. He was able to name all three with a prompt. However, five minutes later he was able to provide all three words without prompts. Mr. Cooper was able to accomplish mental reversals—counting backwards from twenty, giving the months of the year reversed, and spelling the word 'world' backwards. He was slow in the completion of the mental reversals, but did complete all that was asked of him. He generated a large number of items for a specific category and seemed to enjoy the exercise.

Mr. Cooper had some difficulty pointing out the similarities between four of the six items he was given, and he provided no interpretation to the proverbs he was given. He answered "Nothing." to each proverb. The two similarity items he answered demonstrated an ability to think abstractly. Mr. Cooper's judgment and insight about his mental health situation appeared intact. He was able to respond to visual and verbal directions, and to complete a small stepwise task without difficulty.

Mr. Cooper's fund of general information appeared average, he was able to name four of the last five Presidents. His vocabulary skills were average to above average. Mr. Cooper's numerical reasoning was intact. He was able to answer all the simple addition, subtraction, multiplication, division problems he was given and he was able to answer more complex addition and subtraction problems without a paper and pencil. His answers were quick and sure.

## COMPETENCY-RELATED ABILITIES:

Mr. Cooper was asked to define the following items:

Defend – "Protect."

Competent – "Adequate."

Assist – "To Help."

Plea Bargain – "It is an unsubstantiated deal or barter for freedom, when you are afraid of the consequences in court."

Verdict – "A determination."

Not Guilty By Reason Of Insanity – "No idea."

Guilty But Mentally Ill - "Your sick."

Probation – "Period of observation, when you take on new responsibilities. They monitor my behavior. (Who?) Probation officer."

Guilty – "Responsible for an act."

Not Guilty – "You are not responsible for an act."

Witness – Someone who observed some action or behavior – can be for both sides."

Prosecutor – "Someone who represents the people's side – the State's. They are trying to prove someone's guilt."

**CHRISTIANA CARE**
HEALTH SERVICES

Department of Psychiatry
PSYCHIATRIC ADMISSION ASSESSMENT

(Comprehensive Assessment Form Supplement 1)

*900548512*
*8/11/48*
*Anthony Cooper*

INSTRUCTIONS:
To be completed by a psychiatrist within 24 hours of an Inpatient Admission.    Side 1

Additional Current Clinical Information: ☐ Yes  ☐ No

*(see ER notes)*
*57 yr dtr to OP, disabled, former cook, GED education, father of 2 adult*
*children (little contact), presents for 1st ATP referred p̄ ER visit's lead up*
*for depressed Sx (dysphoric, tearfulness, ↓ sleep, ↓ energy, hopeless/helpless, ...*
*is considering death while O̅ a̅ date plan/acts - contracts for safety, O̅ psychotic features,*
*secondary to laughter + ongoing ETOH/cocaine abuse; ER tox ⊕THC*

*(right side):*
*stressors, recent ↓ of time (1yr), ...*
*wife left him some ("I can't go*
*over it that I lost her"); has been*
*"no $ for pills" + months; continues to*
*use THC ;*

Additional Psychiatric/Medical History and Treatment: ☐ Yes  ☐ No

*PPMx : O̅ Tx/history O̅ WDA*
*—— O̅ D/A Rehabs*
*Detox'D multiple dry experimentation*
*↓s ETOH + decades ("anything available")*
*Cocaine x15yrs*
*THC*

Is patient a reliable historian? ☐ Yes  ☐ No    Describe: *⊕ Fam Hx ⊕ "breakdown" ⊕ hosp'x ; legal : 1yr prison (DE 4/94) for drug, terroristic threat*

---

## MENTAL STATUS EXAM

Appearance: *Casual dress to OP*

Speech patterns: *fluent*

Behavior: *unremarkable*

Attitude toward Examiner: *cooperative*

Mood: *dysphoric*

Affect: *liable - sad*

Danger to Self: *∅*

Danger to Others: *∅*

Thought Processes: *goal direct, ⊕ FTD*

Thought Content: *⊕ delusions/hallucin*

---

Sensorium: ___ Alert ___ Other: ___ Orientation: ___ Person ___ Place ___ Time ___ Disorien

Attention Span: ___ Intact (spells: "WORLD" backwards:) ___ Impaired    Concentration: ___ Intact (Serial 7's X 5) ___ Impair

19681 S(47341)(1101)C

*Exhibit - A-5*

*Pg 14*

H & P - Psychiatric Admi



CHRISTIANA CARE
HEALTH SERVICES

Department of Psychiatry
PSYCHIATRIC ADMISSION ASSESSMENT        Side 2

900548512
Cooper Anthony
8/11/48

| MEMORY | INTACT | IMPAIRED |
|---|---|---|
| Immediate Memory: (3 objects in 5 seconds) | ✓ | |
| Short-Term Memory: (3 objects in 5 minutes) | ✓ | |
| Long Term Memory: (address, phone number) | ✓ | |

Fund of Information:     Presents: Past 3 _____ ✓ _____

Ability to Abstract: (Apples/Oranges, Glass House) ___ ✓ _____

Intellectual Functioning: ____ Superior ____ Above Average __✓__ Average ____ Below Average ____ Limited

Judgment: ____ Intact ____ Impaired / Describe: _____
Insight to illness/ situation ____ Good __✓__ Fair ____ Poor

**DIAGNOSIS**

AXIS I   Adjustment Disorder, depressed
vs Substance Induced mood Disorder
to EtOH/Cocaine/THC abuse ; r/o MDD)

AXIS II  Mixed P.D (borderline/antisocial features)

AXIS III  COPD, HTN, Hep C

AXIS IV (Psychosocial Stressors)  recent severe (breakup w/ GF, suicide from)

AXIS V Global Assessment functioning  Current ____40____ Past Year ____?____

**INITIAL TREATMENT PLAN**

| PROBLEM | TARGET SYMPTOMS | GOAL | INTERVENTIONS |
|---|---|---|---|
| ① Depression | - particular wish - hopeless - anhedonia - anxious - ↓ weight & sleep - isolation | euthymia & safety contract | ATP adult group/milieu Tx Indiv psych clinic CBT/Relax Tx Diet Rehab |
| ② to EtOH THC Cocaine | | abstinence | D/C planning |

I have interviewed the patient and reviewed the comprehensive assessment form.

Resident: _____    _____    ____
          Signature                    Print Name          Date

Supervising Psychiatrist: _____
                          Signature

Attending Psychiatrist: _____    W. Berlin, M.D.    ____
                        Signature            Print Name         10/18/02
                                                               Date

Pg - 15

**CHRISTIANA CARE**
HEALTH SERVICES

PSYA

Department of Psychiatry
## COMPREHENSIVE ASSESSMENT

I- 16 02 AGE 054 DOB 08 11
COOPER, ANTHONY A JR            SE
00045292592    0009005485    RACE

**Instructions:**
1. This form is to be completed by a mental health professional (psychotherapist, nurse, psychologist, psychiatrist) to assess a patient's present and present level of psychiatric functioning.
2. Complete form by marking boxes and answering questions. Psychiatrists may use their ID # in lieu of printed name.
   **Note:** For inpatient hospitalization form should be completed w/in 24 hours of admission.

Place of contact __WED Rm # 7__     Date of interview __10/16/02__   Page 1 of 6

### IDENTIFICATION

Name __Cooper, Anthony__      Address __2442 N. Market St. Wilm, De 19802__

Phone (___) _____   Age __54__  DOB __8-11-48__  Sex: ☒ male ☐ female  Religious Affiliation __None__  Practicing ☒ Yes ☐ N

Note any religious beliefs/practices that may affect mental health treatment __none noted__ (Common Law)   has been going to

Marital Status ☐ Married ☐ Single ☐ Divorced(Div) ☐ Separated(Sep) ☐ Widowed(Wid) ☒ (Div)Sep, or Wid, date: __6mo.__  Occupation __disable__

Race ☒ Black ☐ White ☐ Hispanic ☐ Oriental ☐ Other _____  Note any cultural values/practices that impact on treatment? __None note__

Referral Source _____   Brought to hospital By __Self__

### PRESENT ILLNESS

Chief Complaint / Reason for Referral __Depressed__

Source of Information __Pt.__

History of Presenting Problem: What were the precipitating factors? What symptoms have you been experiencing? __54 y.o B/m came to WE requesting psych eval. A+O x3. Tearful. States he was released from jail 6mo ago p̄ 1yr. Common law wife of 24 yrs left him p̄ his return. She's in new relationship. States he hasn't been able to "get over it... & just don't understand why." Requested t go to counseling for closure but she declined. States depressive S/s have continued to intensify. C/o ↓ sleep, ↓ appet c̄ wt loss, hopeless, helpless. Admits to fleeting SI ∅HI. Denies current S/H ideation ∅ plan or intent. No hx attempts. Contra for safety. Denies A/v hallucinations. Admits to ⊕ etoh. States he has ≈ 15 yr hx of crack cocaine abuse (wife was also in addiction). States he's been clean 1 yr 6 since going to jail. Last few days has returned to drug environment. Visiti people who are using in his presence. Denies use himself. UDS ⊕ m's only Tearful throughout interview. Wants help. Declines offer of voluntary in pt hospitalization & is not currently committable. Is agreeable to arranging intake interview @ PHFC later today will call to arrange D/w Dr. Scott__

Current Treatment ☐ Yes ☒ No   Therapist _____  Frequency and Length _____

### RECENT STRESSORS

Relationships __24 yr common law marriage - She ended/left 6mo ago.__

Family __estranged from his Children & grandchildren since__

Health __⊕ emphysema, Hep C, HTN__

Job __disabled__

Financial __Strained__    Legal __released from jail 6mo ago__   Other __risk taking behaviors r/t her crack__

20450 S(47341)(0402)C    H&P - Department of Ps

pg 16



CHRISTIANA CARE
HEALTH SERVICES

Department of Psychiatry
**COMPREHENSIVE ASSESSMENT**

10 16 02 AGE 054 DOB 08 11 9
COOPER, ANTHONY A JR          SEX
00045292592     00090054851

Page 2 of 6

| **SUICIDALITY** |
|---|

Ever thought about suicide? ☒ Yes ☐ No  If yes, when was the last time? _fleeting_     Circumstances _re: being lonely/depr_

Any history of violent behavior(s)? ☐ Yes ☒ No  Describe _____

Current suicidal thoughts? ☐ Yes ☒ No  Plan? ☐ Yes ☒ No  If yes, describe _____

Carried out Plan? ☐ Yes ☒ No  If yes, describe _____

Self mutilation? ☐ Yes ☒ No  If yes, describe _____

Current command hallucinations of self-harm? ☐ Yes ☒ No

Do you intend to harm yourself while here? ☐ Yes ☒ No  What keeps you from harming yourself now? _I don't want to die_

Do you have access to firearms? ☐ Yes ☒ No

| **INJURY TO OTHERS** |
|---|

☒ No concerns  Ideation? ☐ Yes ☐ No  Describe _____

Plan? ☐ Yes ☐ No  Describe _____

Verbal Threats? ☐ Yes ☐ No  Describe _____

Physical Aggression? ☐ Yes ☐ No  Describe (i.e to property/person) _____

Current command hallucinations (harm to other?) ☐ Yes ☒ No  Describe _____

| **CURRENT MEDICATIONS (including OTC)** | | | | |
|---|---|---|---|---|
| Type | Dosage | Frequency | Duration | Physician |
| albuterol | | | | Dr |
| Capoten | — hasn't taken | — unable to afford: | 3wks ago made | Jame |
| flovent | | | application for Rx assistance | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Allergies: _NKDA_

| **PAST PSYCHIATRIC / SUBSTANCE ABUSE TREATMENT** | | | | | |
|---|---|---|---|---|---|
| DATE | ILLNESS (SYMPTOMS) | FACILITY /LOCATION | OUT PATIENT | IN PATIENT | TREATMENT RECEIVED, RESPONSE, COMPLIANCE | TREATING CLINICIAN |
| | | | Ø psych admits, | | Ø rehab. | |
| 4/5/ | etoh | Kirk. Detox | | ↓ | | |
| | | | | | | |

p9. 10


**CHRISTIANA CARE**
HEALTH SERVICES

PSYA

```
16 02 AGE 054 DOB 08 11 44H
COOPER, ANTHONY L JR        SEX M
                             RACE BL
00 045292592   000900548512
```

Department of Psychiatry
## COMPREHENSIVE ASSESSMENT

Page 3 of 6

| PATIENTS MEDICAL HISTORY |
|---|

Family Physician Dr. James STF.   Date Last Seen  1 mo ago   Next appt. _____

Medical Problems  Emphysema, HTN., Hep C
S/P lung reduction.

PAIN   Do you currently have any pain? ☐ Yes ☒ No   If Yes, where: _____
Describe on pain scale (NO PAIN 0) 1 2 3 4 5 6 7 8 9 10 WORST PAIN
Comments: _____
If greater than 5, document referral. Initial _____

History of Head Injury? ☐ Yes ☒ No   ☐ Loss of Consciousness

Describe _____

Last Menstrual Period (date) _____   Pregnant ☐ Yes ☐ No   Sexually Active ☐ Yes ☐ No

Practicing Safe Sex ☐ Yes ☐ No   Birth Control N/A ☐ No   Method _____

| OPTIONAL |
|---|

Have you ever had a Sexually Transmitted Disease? (STD) ☐ Yes ☐ No   Have you ever been HIV tested? ☒ Yes ☐ No

When 1-2 yrs ago   Results ( — )   Sexual Orientation (Optional) _____

| HISTORY OF SUBSTANCE ABUSE (Mark all that apply) |
|---|

| DRUG | ROUTE/AVG DAILY USE | AMOUNT / FREQUENCY | LAST USE | URINE-EMIT/RES |
|---|---|---|---|---|
| None | | | | |
| Cigarettes | ∅ | | | |
| Alcohol | (+) | not q day. Today (+) Vodka | | Bal = 4? |
| Opiates/Heroin | } Denies | | | |
| Benzo/Sedatives | | | | |
| Cocaine | (+) | recently around people smoking but hasn't directly inhaled himself. | 1 yr 6mo. | |
| Stimulants | | | | |
| Marijuana | | p̄ UDS (+) states he hasn't smoked but been around. | | (+) |
| Hallucinogens | } Denies | | | |
| PCP | | | | |
| Other | | | | |

| WITHDRAWAL SYMPTOMS |
|---|

☐ Insomnia   ☐ Nausea/Vomiting   (+) hx   ☒ H/O Hallucinations   ☐ Goose bumps
☐ Hand Tremor   ☐ Sweating   ☐ Diarrhea   ☐ Runny Nose/Tearing
☐ Pulse > 100   ☐ H/O Withdrawal Seizures - last ___   ☐ Muscle Aches/Cramps   ∅ present

Complications: ☒ Blackouts   ☐ Personality Change   ☐ Tolerance   ☐ Used more than intended
☐ Unsuccessful attempts to cut down   ☐ Continued use despite negative consequences

| RECOVERY HISTORY |
|---|

Attempts to Quit on own _____   Longest Period of Sobriety (when/circumstances) 1 yr 6mo   How in jail

AA/NA Experience: Past ☒ Yes ☐ No   Present ☐ Yes ☒ No   Date of Last Meeting few mo   Sponsor _____

Pg. 19



CHRISTIANA CARE
HEALTH SERVICES

Department of Psychiatry
**COMPREHENSIVE ASSESSMENT**

IO 16 02 AGE 054 DOB 08 11 94
COOPER, ANTHONY A JR
                                    SEX
00045292592                         RACE BL
                    000900548512

Page 4 of 6

## FAMILY, MEDICAL, AND PSYCHIATRIC HISTORY
### CONSTELLATION

| RELATIONSHIP | AGES/AGE OF DEATH | PAST AND/OR CURRENT PSYCHIATRIC/SUBSTANCE ABUSE HISTORY |
|---|---|---|
| Mother | ↓ | last yr — aneurysm |
| Father | ↓ | emphysema (+) in mental institution "nervous bkdwn |
| Siblings | 1 ♂ | close — in New England ∅S/A, ∅psych. |

Anyone in family ever commit suicide? ∅

Relevant Extended Family: _____

Describe childhood

## TRAUMA HISTORY

| | | When | By Whom | Describe: |
|---|---|---|---|---|
| Verbal | ☐ Yes ☒ No | When | By Whom | Describe: |
| Emotional | ☐ Yes ☐ No | When | By Whom | Describe: |
| Physical | ☐ Yes ☐ No | When | By Whom | Reported: ☐ Yes ☐ No |
| Sexual | ☐ Yes ☐ No | When | By Whom | Reported: ☐ Yes ☐ No |

## SOCIAL / PERSONAL HISTORY

Lives Alone ☒ Yes  ☐ No  With whom          Who is most supportive of you? My brother.

Currently Employed ☐ Yes  ☒ No  How Long?          Employers Name  disabled 2° medical

Employment History  Cook

Military Service ∅          Date of Service ∅          Type of Discharge ∅

Education History  GED

Hobbies and Interests

Currently in a relationship? ☐ Yes  ☒ No  How Long? 6mo ago  Relationship History  Bkup of 24 yr
"wife involved c̄ someone left when returned from jail          Common law marriage

Children ☒ Yes  ☐ No  (How many, age(s), primary caretaker)  2 grown children — "don't come
                                                                                around since sh
Other pertinent family issues  hasn't seen grandchildren                         left "

## PATIENT ASSETS AND STRENGTHS

☒ Capable of insight                    ☒ Has a place to live          ☒ Access to treatment: ☐ Finances
☒ Demonstrated motivation to change     ☐ Support system in place                              ☒ Health Insurance
☐ Prior responses to treatment                                                                 ☐ Transportation

☐ Other: _____


**CHRISTIANA CARE**
HEALTH SERVICES

PSYA

```
I   16 02  AGE 054 DOB 08 11 948
COOPER, ANTHONY A  JR         SEX M
                              RACE  9L
00045292592   000900549512
```

Department of Psychiatry
## COMPREHENSIVE ASSESSMENT

Page 5 of 6

---

### LEGAL HISTORY

☐ No legal problems     ☐ DUI's     ☐ Recent Arrest     ☐ On Probation     ☐ Parole

Offense/time period _____   Probation/Parole Officer _____

Other Legal History: released from 1yr in jail 6mo ago - failure to complete drug program.

Declared Incompetent ☐ Yes  ☒ No  Reason: _____
Legal guardian ☐ Yes  ☒ No  Name: _____

### NEUROVEGETATIVE CHANGES

Appetite (Describe) poor x 6mo.     Change in Weight ☒ Yes ☐ No   Amount 15 lbs x 6mo.
Sleep Pattern poor     Recent Change in Sleep yes x 6mo   Energy Level (Describe) none
Libido N/a     Elimination Problems (Bladder, Bowel) if yes, describe N/a.
Other Social w/drawal; hopeless, helpless, ↓ concentration, ↓ motivation.
Denies S/H ideation or intent but admits he's had fleeting thoughts of suicide 2° loneliness — No plan or intent.

### MENTAL STATUS ASSESSMENT (Mark Appropriate Items and Elaborate As Necessary)

Appearance  ☐ Neat ☐ Well groomed ☐ Disheveled ☐ Dirty ☐ Drowsy ☐ Intoxicated ☒ Casual
Eye Contact  ☒ Adequate ☐ Intense ☐ Staring ☐ Avoidant ☐ Poor ☐ Other
Speech  ☒ Normal ☐ Soft ☐ Loud ☐ Slowed ☐ Slurred ☐ Pressured ☐ Scant ☐ Repetitive
Interaction  ☒ Pleasant ☐ Cooperative ☐ Angry ☐ Guarded ☐ Suspicious ☐ Apathetic ☐ Aloof
Motor Activity  ☒ Appropriate ☐ Restless ☐ Hyperactive ☐ Repetitive ☐ Anergic ☐ Ataxic ☐ Pacing ☐ Agitated ☐ Other

Affect  ☐ Full range ☐ Flat ☐ Blunted ☐ Labile ☐ Constricted ☐ Inappropriate ☒ Tearful ☐ Other
Mood  ☐ Calm ☐ Anxious ☒ Depressed ☐ Manic ☐ Hostile ☐ Sad ☒ Irritable ☐ Other
Thought Process  ☒ Coherent ☒ Goal directed ☐ Thought blocking ☐ Flight of ideas ☐ Loose associations ☐ Circumstantial ☐ Tangential
☐ Confabulations ☐ Perseveration
Thought Content  ☐ Coherent Ⓢ Suicidal Ⓗ Homicidal Ⓗ Hallucinations: Ⓐ Auditory Ⓥ Visual ☐ Olfactory ☐ Tactile ☐ Gustatory Ⓓ Delusions
☐ Persecutory ☐ Somatic ☐ Jealousy ☐ Grandiose ☐ Thought Insertion ☐ Nihilistic ☐ Religious ☐ Reference ☐ Broadcasting ☐ Withdraw

Preoccupations  (Describe) b/up of 24 yr common law marriage "I just don't understand"
Obsessions  (Describe) Denies
Compulsions  (Describe)

Sensorium  ☒ Alert  ☐ Other
Orientation  ☒ Oriented: ☒ Person ☒ Place ☐ Time  ☐ Disoriented
Attention Span  ☐ Grossly intact  ☒ Impaired     Concentration  ☐ Grossly intact  ☒ Impaired
Memory:  immediate memory  ☒ Grossly intact (3 objects remembered in 5 seconds) ☐ Impaired
short term memory  ☒ Grossly intact (3 objects remembered in 5 minutes) ☐ Impaired
Intellectual Functioning ☐ Superior ☐ Above average ☒ Average ☐ Below average
Judgment  ☒ Intact ☐ Impaired  Comment _____
Insight  ☐ Good ☒ Fair ☐ Poor

pg-20


CHRISTIANA CARE
HEALTH SERVICES

IO 16 02 AGE 054 DOB 08 11 94
COOPER, ANTHONY A JR
00045292592    SEX
    RACE BL
    000900548512

Department of Psychiatry
**COMPREHENSIVE ASSESSMENT**

Page 6 of 6

## DIAGNOSTIC IMPRESSION

Axis I  Major Depression ; hx polysubstance abuse

Axis II  Defer

Axis III  Hep C, Emphysema, HTN

Axis IV  PSYCHOSOCIAL AND ENVIRONMENTAL PROBLEMS (Mark all that apply)
[X] Problems with significant other/family  [ ] Housing problems  [X] Financial problems  [X] Other: risk taking behavior
[X] Health problems  [X] Occupational problems  [ ] Legal Issues                                  r/t his recovery.

Axis V  Global Assessment of Functioning    Current  Not done  Past Year _____
100 _____ 50 _____ 10 _____ 0
Superior Functioning        Serious Symptoms        Persistent Danger

## SUMMARY, RECOMMENDATIONS, AND FINAL DISPOSITION

Case D/w Dr. Scott. Pt is depressed but adamently denies
current S/H ideation or intent. Contracts for his safety.
No hx past attempts. Declined offer of Vol. In pt psych admit.
Is agreeable to contacting PHTC later today to arrange for
intake interview. Safety Contract signed. Pt will Call
PHTC ⌐09 to arrange appt.

[ ] Inpatient    [ ] Voluntary (Unit) _____    [ ] Involuntary (Unit) _____
[X] Partial Hospital Treatment Center: Will Call later today to arrange intake interview.
[ ] Outpatient    Psychologist: _____
                  Psychiatrist: _____
                  Other: _____

NOTE: If patient is referred for inpatient hospitalization then assess for contraband:

Do you have any valuables in your possession?  [ ] Yes  [ ] No    Are you at present under the influence of any medication or illegal drug?  [ ] Yes  [ ] No
Do you have any medications or drugs in your possession?  [ ] Yes  [ ] No    Are you carrying any weapons or objects you could use to hurt self/others  [ ] Yes  [ ] No

IF PATIENT ANSWERS YES TO ANY OF THE ABOVE QUESTIONS PLEASE CONFISCATE ITEMS AND GIVE THEM TO INPATIENT STAFF

Mary MRussell RN c                          10/16/02        0405
Assessor Signature / Title                   Date            Time

Russell
Assessor Print Name

_____              _____
Signature of Supervisor (if applicable)       Date

_____
Supervisor Print Name

20-21

# First Correctional Medical
# HRYCI Mental Health Unit

January 15, 2004

To Whom It May Concern:

I am writing in regard to Anthony Cooper, SBI# 275064.  Since March 2003, Mr. Cooper has resided on the Transition Unit, which is designed to provide mental health support and treatment to inmates whose psychiatric symptoms hinder their ability to function in the general prison population. In most cases, the goal is to assist these inmates to achieve a level of stability that allows them to return to general population.

While on the unit, Mr. Cooper has been engaged in individual, group, and behavior modification therapy.  He is currently participating in a group on depression.  He requests and completes therapeutic reading assignments. He regularly attends the unit's weekly community meeting.  He is monitored by a staff psychiatrist, and is compliant with medication that has been prescribed to address his mental health symptoms.

Sincerely,

Deborah G. Muscarella, MA

Deborah G. Muscarella, M.A.
Transition Unit Coordinator

Exhibit - A-6

pg. 22

Superior Court of the State of Delaware, _New Castle_ County

# PLEA AGREEMENT

State of Delaware v. _Anthony A. Cooper, Jr._

Case No(s): _0301018775_    Cr.A.#s: _1N03-02-0136 through 0142_

☐ Title 11 HAB. OFFENDER _____    ☐ BOOT CAMP ELIGIBLE    ☐ INELIGIBLE
☐ RULE 11(e)(1)(C) — If out of guideline, reason is as follows: _____
☐ Title 11, §4336, sex offender notification required    ☐ Title 11, §9019(e), forensic fine ☐ $100(F), ☐ $50(M)

Defendant will plead guilty to:

| Count | Cr.A.# | Charge    [LIO if applicable] |
|-------|--------|-------------------------------|
| I | 1N03-02-0138 | Assault 1st Degree |
| II | 1N03-02-0136 | Possession of a Deadly Weapon During the Commission of a Felony |

Upon the sentencing of the defendant, a **nolle prosequi** is entered on ☐ the following charges/☑ all remaining charges on this indictment:

| Count | Cr.A.# | Charge |
|-------|--------|--------|
| | | |

Sentence Recommendation/Agreement:    ☑ PSI    ☐ Immediate Sentencing

State and Defendant agree to the following:
☑ Restitution: _to victim + VCLR_
☑ No _____ contact w/ _victim or her family_
☑ Other Conditions:

_Domestic Violence Counseling_

_Substance Abuse Evaluation & treatment_

DAG: _Donald R. Roberts_    DEF. COUNSEL: _John F. Dinger_
　　　PRINT NAME　　　　　　　　　　　　　　PRINT NAME

_Donald R. Roberts_ (SIGNATURE)    _____ (SIGNATURE)

　　　　　　　　　　　　　　　DEFENDANT: _Anthony Cooper_

Date: _9/30/2003_

XC: Attorney for Defendant, Defendant
Attorney General, Attorney General Worksheet

_Exhibit A-7_    _Pg. 23_    Page _1_ of _1_

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE    )
                    )
    v.          )  Crim. ID. No. 0301018775
                    )
ANTHONY A. COOPER, JR.,  )
                    )
    Defendant.    )

BEFORE THE HONORABLE SUSAN C. DEL PESCO, J.

APPEARANCES:

    DONALD R. ROBERTS, ESQ.
      Deputy Attorney General
      for the State of Delaware

    JOHN S. EDINGER, JR., ESQ.
      Attorney for Defendant Anthony Cooper, Jr.

SEPTEMBER 30, 2003
PLEA COLLOQUY PROCEEDINGS

THOMAS E. MAURER, RPR
SUPERIOR COURT OFFICIAL REPORTER
NEW CASTLE COUNTY COURTHOUSE
500 N. KING STREET, SUITE 2609
WILMINGTON, DELAWARE 19801-3725
(302) 255-0566

---

**Page 3**

1      And I've been asking him to subpoena people,
2  and things of that nature. And he just doesn't seem
3  to be -- I don't know what it is -- he's just like,
4  you're going to get 20 years to life, and that's it,
5  there's nothing that can be done. And I don't
6  understand that. So I'm asking that the Court -- I
7  have asked Mr. Edinger to withdraw from the case.
8  And, I guess, he still refuses. And I don't
9  understand why. There's no -- I mean, I don't have
10  any confidence in him.
11    ✱ THE COURT: You have a long criminal
12  history. You have been in courtrooms before,
13  correct?
14    MR. COOPER: The last time I was in a
15  courtroom for something of this nature, your Honor,
16  was over 30 years ago.
17    THE COURT: Over three years ago?
18    MR. COOPER: Over 30 years ago.
19    THE COURT: Over 30 years ago. All right.
20  And what happened at that time? I don't have your
21  record in front of me.
22    MR. COOPER: I got a charge, I was sentenced
23  to two to five sentence for assault first degree, and

---

**Page 2**

1              September 30, 2003
2              Courtroom No. 4E
3              10:15 a.m.
4  PRESENT:
5    As noted.
6    THE COURT: Good morning. This is the trial
7  in the case of the State of Delaware vs. Anthony A.
8  Cooper, Jr. We are about to select a jury. It has
9  been brought to my attention by Mr. Edinger that
10  Mr. Cooper wants to address the Court with regard to
11  representation. And I am happy to listen to what you
12  have to say. Mr. Cooper.
13    MR. ANTHONY COOPER: Good morning,
14  your Honor.
15    THE COURT: Good morning.
16    MR. COOPER: I have spoken with attorney
17  Edinger on several occasions, and made a request in
18  reference to my case. And he doesn't seem to be
19  acting in my best interest in terms of trying to put
20  together some sort of a defense for me. I'm of the
21  opinion that if you can be accused of something,
22  there must be some sort of defense that can be used,
23  even if it's not effective.

---

**Page 4**

1  two to four sentence that ran concurrent for
2  attempted assault.
3    THE COURT: And, so, you spent some time in
4  jail?
5    MR. COOPER: I spent 18 months.
6    THE COURT: 18 months. And when did you get
7  out of jail?
8    MR. COOPER: 1976.
9    THE COURT: And between 1976 and now, you're
10  telling me you haven't had any criminal activity?
11    MR. COOPER: No. There's just been
12  misdemeanors, been a lot of driving misdemeanors, but
13  nothing of a criminal nature.
14    THE COURT: Well, have you been in jail
15  since 1976?
16    MR. COOPER: I was in for aggravated
17  menacing, which I'm on probation for now. I was sent
18  to a drug program. I can't do a drug program because
19  of my health, so what the judge did was he sentenced
20  me to a six month Level V, and put me on, released me
21  on Level III probation.
22    THE COURT: When were you released from
23  Level V?

*Exhibit B-1*    *P92H*

**5**

1    MR. COOPER: 2002.
2    THE COURT: Okay. So you were six months at
3    Level V and got out in 2002?
4    MR. COOPER: Yes.
5    THE COURT: And then you got arrested in
6    January of 2003 on these charges, right?
7    MR. COOPER: Yes, ma'am.
8    THE COURT: Okay. So you were out for,
9    what, six months, or so?
10    MR. COOPER: I was out ten months.
11    THE COURT: Ten months. Okay.
12    MR. COOPER: Yes.
13    THE COURT: The choices for you at this
14    point are not even your choice, because it is not
15    your choice to whether or not you can represent
16    yourself, it's me reviewing the facts and determining
17    whether or not you're capable of representing
18    yourself. But just let me tell you what the two
19    considerations are.
20    One is that you represent yourself. Or the
21    other is that Mr. Edinger represents you. And the
22    third possibility is that you represent yourself with
23    him available to consult with you. There is no

**6**

1    fourth option of some other attorney being appointed
2    at this stage of the proceedings. It is just not
3    possible. It is not appropriate to be raising this
4    issue on the -- it's on the morning of trial, because
5    I understand a letter was written last Friday -- but
6    it is essentially the morning of trial, as far as I'm
7    concerned, because I was unaware of it until now.
8    And there are, there are lots of important rules that
9    have to be followed in order to effectively get a
10    case through the trial process.
11    Are you suggesting that you want to
12    represent yourself?
13    MR. COOPER: Your Honor, I'm not capable of
14    representing myself. I've been asking this attorney
15    for a lot of months, about three or four months. I
16    mean, it's not my fault that he waits until the last
17    minute to decide that he is or is not going to
18    withdraw from the case. I've done everything I
19    could. I've written him letters. And, your Honor, I
20    mean, I can't be responsible for him not withdrawing
21    and waiting until this last date. I mean, I've been
22    trying for the longest time, so it should have been
23    resolved.

**7**

1    THE COURT: Well, the point is that whether
2    this had been raised last week or six months ago, if
3    your request is a different attorney just because
4    you're not satisfied with his response to the charges
5    against you, that's not a sufficient basis for having
6    him removed. I'm sure you can see that if every
7    attorney were -- excuse me -- if every individual
8    charged with a crime were given the right to choose
9    their counsel, it would be chaos. And we don't have
10    such a system.
11    You're assigned representation. And you
12    haven't -- you've told me that he hasn't subpoenaed
13    people that you want to have subpoenaed. He has to
14    exercise his judgment as to whether or not there's
15    any logic to what it is you requested him to do.
16    Now, I'm not going to ask you to explain to me
17    because I don't want you to reveal anything about
18    your case, you're not under any obligation to do
19    that, and you've got the protection of the Fifth
20    Amendment.
21    But at this point you told me you've spoken
22    with him, you told me he hasn't subpoenaed some
23    people that you would like for him to have

**8**

1    subpoenaed. I'm not going to press him as to whether
2    or not he's planning a defense, but a lot of the
3    decisions about the defense come from hearing what
4    the evidence is. But just so I understand, you are
5    saying that what you want is different counsel, not
6    to represent yourself, correct?
7    MR. COOPER: Yes, your Honor.
8    THE COURT: All right. I cannot, and will
9    not, accommodate that request. I suggest that you
10    work with him. If he is inadequate in his
11    representation of you, that's a discussion that comes
12    up after the trial once the quality of his
13    representation can be ascertained. But I cannot say
14    in advance, nor can you, really, that what he intends
15    to do on your behalf is not going to be adequate.
16    MR. COOPER: But he doesn't intend to do
17    anything, from what he's telling me. Because there's
18    nothing that he's going to do, nothing at all. I
19    don't understand that --
20    THE COURT: Well, the State has the burden
21    of proof in a trial, so what a defense attorney does,
22    mostly, is to cross-examine the State's evidence.
23    Many cases are simply the defense attorney

Pg-25

9

1  challenging the reliability and the quality of the
2  State's evidence.
3        MR. COOPER: Your Honor, I've asked this
4  attorney where are you getting -- because the State,
5  they claim they're going to try me under habitual
6  offender, okay. And I'm asking this attorney, well,
7  for what reasons? And he's telling me it's something
8  about a felony that didn't occur --
9        THE COURT: Well, I can't help you with
10  that -- let me help you with that. This trial will
11  not consider whether or not you're an habitual
12  offender. This trial will consider nothing but the
13  charges in the indictment. The question of whether
14  you are a habitual offender is something that will be
15  discussed later. That has to do with the sentence
16  that would be imposed if you were convicted. So you
17  don't have to worry about the habitual offender
18  charges and whether or not there was a conviction.
19  You don't have to worry about that, you'll have a
20  chance to talk about that at another time. That
21  doesn't impact what's going to be done here today in
22  terms of trying these charges. That's a separate
23  matter.

10

1        If you are, in fact, an habitual offender,
2  that would put you in a worse position at the time of
3  sentencing, but that's not what we're here about. We
4  are here about whether or not the State can prove
5  beyond a reasonable doubt the charges in this
6  indictment without regard to other convictions or
7  lack of other convictions. Okay?
8        MR. COOPER: Okay.
9        THE COURT: So that's a different thing.
10  Does that help?
11        MR. COOPER: It doesn't, it doesn't change
12  the fact that I don't want this man to defend me,
13  because I don't believe that he will defend me. But
14  there's nothing I can do about it, according to you,
15  your Honor, so I'll just have to do whatever your
16  decision is.
17        THE COURT: Okay. Well, I'm going to
18  require that you permit him to represent you. And I
19  urge you to give him your very best cooperation.
20        What's going to happen shortly is that
21  people will come into the room and we'll begin the
22  process of jury selection. I have met with the
23  attorneys for purposes of getting the names of the

11

1  witnesses, and the dates, and all the kinds of things
2  I need in order to do jury selection process. We'll
3  go through that process, we'll get a jury, and then
4  the State will begin its presentation of evidence.
5        In the meantime, you can speak with
6  Mr. Edinger, as the witnesses testify, and provide
7  him with information to assist him in cross-examining
8  the witnesses effectively. And if, in fact, there is
9  someone you believe can be called in who would assist
10  you in your defense or create a question as to the
11  credibility of any of the State's witnesses, then you
12  need to tell Mr. Edinger who they are and how he can
13  find them. And you need to make him -- you explain
14  to him, well, why they, what they can contribute.
15        MR. COOPER: Did you say to determine their
16  credibility, your Honor?
17        THE COURT: Well, the State's going to offer
18  witnesses. And it may be that you don't think
19  they're telling the truth. And you tell Mr. Edinger,
20  ask him this, or ask him that, or maybe some other
21  witness that you know of can help to challenge their
22  credibility. But those are things you have -- he
23  can't know if you don't tell him. He has to depend

12

1  on you to provide information. So you talk to him
2  during the course of the trial, and if there's
3  anything that you reveal to him that he thinks will
4  be of assistance to you, I'm sure he'll follow-up on
5  it. If he doesn't, then we have a procedure after
6  the trial called ineffective assistance of counsel.
7  But I can't assume here in the beginning that his
8  assistance will be ineffective because you're not
9  comfortable with him. Okay?
10        MR. COOPER: Yes.
11        THE COURT: All right. We're going to ask
12  for a jury panel to be brought up. That will take a
13  few minutes, right?
14        THE BAILIFF: Yes, ma'am.
15        THE COURT: So we'll probably start in maybe
16  ten minutes.
17        Now, counsel, is there anything else before
18  we begin?
19        MR. EDINGER: Your Honor, I just was
20  speaking with Mr. Roberts during the Court's colloquy
21  with the defendant. There have been some changes in
22  the plea offer, and I'm going to speak to Mr. Cooper
23  about that, see if that causes a change in how we

Pg. 26

13

1  proceed.
2      MR. ROBERTS: And the reason why is when
3  Mr. Cooper explained that he is not habitual, I'm
4  looking at the history of his NCIC file from up north
5  some place -- Massachusetts. And it is confusing,
6  but it appears -- and I don't have any reason to
7  dispute what he said -- that he may be correct, it
8  may not be an attempted murder conviction up there,
9  it might have been reduced to an assault. But it's
10  hard to read the records. But I tracked the number,
11  and the attempted murder, in fact, shows up on the
12  assault first. So that puts us in a different
13  posture where he's not an habitual, so I extended to
14  Mr. Edinger a revised plea offer in light of that
15  information.
16      THE COURT: Well, then, that's very helpful
17  that, Mr. Cooper, our conversation has had a benefit
18  that neither one of us intended or anticipated, and
19  that is that the State has had an opportunity to
20  review the very thing that was of concern to you, and
21  that was whether or not you were an habitual offender
22  or eligible for that status.
23      Now Mr. Edinger has got a different proposal

14

1  for you, you'll consider it, you'll say yes, you'll
2  say no. And then we'll proceed. Okay?
3      MR. COOPER: All right.
4      THE COURT: Okay. I think I'll stand back
5  here for a bit.
6      (Mr. Edinger confers with Mr. Cooper in
7  lockup, 10:29 to 11:13 a.m.)
8      MR. ROBERTS: Your Honor, the plea has been
9  executed.
10      The defendant Anthony Cooper is going to
11  enter a plea to Count I, Assault in the First Degree,
12  and Count II, Possession of a Deadly Weapon During
13  the Commission of a Felony. And because he's
14  pleading to indicted charges, we don't need to
15  demonstrate any exceptional circumstances, but I will
16  note that's a more harsh plea offer than what was
17  extended at case review.
18      We are recommending a presentence
19  investigation, restitution to the victim and the
20  Victims Compensation Board, no contact with the
21  victim or her family, complete a domestic violence
22  counseling program, as well as a substance abuse
23  evaluation, and follow any treatment plan.

15

1      THE COURT: Good morning.
2      MR. EDINGER: Good morning, your Honor.
3      This is Mr. Cooper. And that is the sum and
4  substance of the plea agreement. Mr. Cooper's
5  entering this plea with the understanding that the
6  State is not seeking to sentence him as an habitual
7  offender at sentencing. And he understands that by
8  taking this plea, the Court could sentence him up to
9  30 years in jail if the Court thought that sentence
10  being fit. And he also understands that the Court
11  must sentence him to a minimum jail sentence of two
12  years. He understands the charges, he understands
13  the penalties, he understands the trial rights he
14  waives when he enters this plea. And I believe he's
15  doing so knowingly, intelligently, and voluntarily.
16      (Questioning of Mr. Cooper by The Court:)
17  BY THE COURT:
18  Q.  Okay. Mr. Cooper, how old are you?
19  A.  Hello.
20  Q.  How are you?
21  A.  I'm still here, your Honor.
22  Q.  You're still here. All right.
23      I have in front of me two pieces of paper, a

16

1  guilty plea form and the plea agreement. Have you
2  reviewed these with your attorney?
3  A.  Yes.
4  Q.  Have you read them?
5  A.  No -- yes -- no -- yes. And he read them to
6  me.
7  Q.  He read them to you?
8  A.  So that's sufficient, yes.
9  Q.  And you do know what they say?
10  A.  Yes.
11  Q.  All right. And have you signed each of
12  them?
13  A.  Yes.
14  Q.  Okay. Let's touch on some of the high
15  points here.
16      The indictment was a seven-count indictment
17  charging you with assault first, possession of a
18  deadly weapon during the commission of a felony,
19  terroristic threatening, aggravated menacing,
20  possession of a deadly weapon during the commission
21  of a felony, again, which is significant because
22  there's mandatory time with that charge, terroristic
23  threatening, noncompliance with bond conditions.

Case Compress

17

1  So there were seven charges, four of them
2  were felonies. And the State has offered to let you
3  plead to two counts, Counts I and II, both felonies,
4  and dismiss the other charges against you as part of
5  this plea agreement.
6  As you know, the -- or as it's indicated
7  here -- and I hope you understand -- the sentencing
8  would not be today, sentencing would be at a later
9  date after there's been a presentence investigation.
10  But there is an agreement that you will not be
11  considered a habitual offender, that certainly your
12  criminal record will be taken into consideration, but
13  you will not be subject to what is in some places is
14  called a third strike kind of law or a law where
15  there's a heightened sentencing requirement due to
16  the fact of your prior convictions. Okay?
17  A.  I understand.
18  Q.  The agreement also says that you will make
19  restitution to the victim and to the Violent Crimes
20  Compensation Board if they have, in fact, made
21  payments as a result of these crimes, and that you
22  will have no contact with Sylvia Jones or Dwight
23  Bunting.

18

1  The recommendation of sentencing, of course,
2  will come from the presentence investigator, and it
3  will be considered by the Court. The Court will make
4  the final determination of what sentencing is
5  appropriate, but it will not be less than two years
6  because there's a minimum mandatory sentence. The
7  total possible sentence, of legal sentence could be
8  up to 30 years, but the guidelines are for
9  substantially less than that -- on the assault, up to
10  three years at Level V, and on the weapons charge --
11  MR. EDINGER: Actually, it's up to 30
12  months. And that's my bad handwriting, your Honor.
13  THE COURT: I'm sorry.
14  BY THE COURT:
15  Q.  All right. 30 months.
16  And on the weapons charge, up to five years
17  at Level V is the guideline. Again, depending on
18  your history -- and I'm not clear about your
19  history -- and I may not even be the judge sentencing
20  you -- you could legally be sentenced up to 30 years.
21  You have previously been convicted of a
22  felony; is that correct?
23  A.  Yes.

19

1  Q.  So you understand that there are
2  consequences that flow from that status as a
3  convicted felon.
4  All right. Let's get down to business here.
5  I'm going to ask you, with regard to Counts I and II
6  of the indictment, whether you committed the crimes
7  that are charged. Did you, on or about January 29,
8  2003, in the County of New Castle, State of Delaware,
9  intentionally cause serious physical injury to Sylvia
10  Jones by means of a deadly weapon, by stabbing her
11  with a knife?
12  A.  Yes.
13  Q.  And did you, on or about the 29th day of
14  January, 2003, in the County of New Castle, State of
15  Delaware, knowingly possess deadly weapons during the
16  commission of a felony by possessing two knives, a
17  deadly weapon during the commission of assault in the
18  first degree, as set forth in Count I of the
19  indictment?
20  A.  Yes.
21  Q.  Okay. Do you understand that those are the
22  two charges to which you are entering a plea of
23  guilty at this time?

20

1  A.  Yes.
2  Q.  Do you have any questions of me or of your
3  attorney with regard to this plea?
4  A.  No.
5  Q.  Are you satisfied that your attorney has
6  fully advised you of your rights and of the
7  consequences of the guilty plea?
8  A.  Yes.
9  Q.  Okay. Are you satisfied that I should
10  accept this plea as having been knowingly,
11  intelligently and voluntarily entered?
12  A.  Yes.
13  THE COURT: All right. I do accept it as
14  such. You will be scheduled -- I don't have the date
15  for you -- do you?
16  THE CLERK: Yes, your Honor. We have a date
17  of November 21st at 9:30 a.m.
18  THE COURT: Okay. November 21st you'll be
19  sentenced on these charges. Thank you, Mr. Cooper.
20  MR. EDINGER: Thank you, your Honor.
21  MR. ROBERTS: Thank you, your Honor.
22  (Plea colloquy concluded at 11:20 a.m.)
23

Pg. 25

21

## R E P O R T E R   C E R T I F I C A T E   P A G E

STATE OF DELAWARE:
NEW CASTLE COUNTY:

I, Thomas E. Maurer, RPR, Official Court
Reporter of the Superior Court, State of Delaware, do
hereby certify that the foregoing is an accurate
transcript of the proceedings had, as reported by me
in the Superior Court of the State of Delaware, in
and for New Castle County, in the case therein
stated, as the same remains of record in the Office
of the Prothonotary at Wilmington, Delaware, and that
I am neither counsel nor kin to any party or
participant in said action, nor interested in the
outcome thereof.

WITNESS my hand this 14th day of January,
2004.

_____
Thomas E. Maurer, RPR
Official Court Reporter
Delaware Cert. No. 155-PS

P9. 29

IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,     :
                       :
        v              :
                       :  ID No. 0301013775
ANTHONY A. COOPER      :
                       :
        Defendant      :

November 21, 2003

BEFORE:  HON. JOHN E. BABIARZ, JR., J.

APPEARANCES:

        DONALD ROBERTS, ESQ.
        On behalf of the State

        JOHN S. EDINGER, JR., ESQ.
        On behalf of the Defendant

-----

Sentencing

-----

SUPERIOR COURT REPORTERS
500 King Street, 2nd Floor, Suite 2609
Wilmington, Delaware 19801-3725
(302) 255-0560

---

2

1                   Courtroom 4A

2                   November 21, 2003

3     Present:

4         As noted.

5         MR. ROBERTS:  Good morning, Your Honor.

6         THE COURT:  Good morning, Mr. Roberts.

7         MR. ROBERTS:  The State moves the

8     sentencing of Anthony Cooper.  He's in custody.

9     We'll wait a minute while the transfer takes place.

10    And I should advise the Court that the victim was

11    present, Sylvia Jones, and she wishes to address Your

12    Honor.

13        THE COURT:  Certainly.

14        MR. ROBERTS:  Your Honor, this is Sylvia

15    Jones.

16        MS. JONES:  Good morning, Your Honor.

17        THE COURT:  Good morning.

18        MS. JONES:  I'm the victim in this case.

19    And all I want to do is ask you to give Anthony

20    Cooper the maximum because on the day of my dad's

21    memorial service, he came into my house, gave his

22    condolences, and waited 72 hours later to attack me

23    as I was leaving my dad's memorial service.

---

3

1         By his attempt on my life, I have very

2     little to no feeling in my left-hand.  I have stab

3     wounds that will bother me the rest of my life, where

4     I can no longer work the rest of my life as a

5     phlebotomist, a nurse in my job.

6         I'm asking you to give him maximum time for

7     what he has done to my life and my family's life.

8         THE COURT:  Thank you.  I do appreciate you

9     coming in front of me.

10        MR. EDINGER:  Good morning, Your Honor.

11    This is Mr. Cooper.  The presentence report listed

12    his health as poor, but did not seem to go into all

13    the matters that are currently affecting Mr. Cooper

14    right now.

15        He is diagnosed with emphysema and he is

16    actually on disability because of that.  I think this

17    last year he went to Philadelphia and went through an

18    experimental process of lung reduction, and both his

19    lungs have been reduced to half their capacity.

20        Now, this treatment is not to cure the

21    emphysema, but the purpose of it was to at least

22    enhance his ability to live however many years he has

23    left as a result of the emphysema.

---

4

1         The diagnosis probably is not good for

2     Mr. Cooper.  He'll probably not have very many years

3     left to live due to his illness.  His understanding

4     from the doctors is that we're talking less than five

5     years of how much time he has to live due to his

6     emphysema.

7         When he took this plea, he recognized that

8     what he had done was unforgivable.  And I don't think

9     he comes to the Court today to try and justify what

10    happened, but however I would submit the picture

11    painted in the presentence report as to the facts of

12    the case painted an uglier picture -- and I'm not

13    trying to say it's any less ugly even than what he

14    did, but the circumstances that surrounded this

15    incident weren't brought entirely forward in the

16    presentence report.

17        At the time, Mr. Cooper was intoxicated, he

18    has a drug problem, an alcohol problem, and probably

19    some mental health issues as well.  And at this

20    point, he and the victim who had been married for 24

21    years and have two children and grandchildren had

22    this relationship that had been on and off, obviously

23    violence being involved, in that the victim had

---

PLAINTIFF

EXhiBiT - B-2        pg -30

5

1  sought and obtained a no contact order, which
2  Mr. Cooper was in violation of at the time, but a
3  relationship she had shared by using drugs and
4  alcohol together.
5          And at the time Mr. Cooper was seeking
6  money to buy drugs from the victim, and that's why he
7  went to see her initially, not to assault her, not to
8  attack her.
9          Apparently the victim's brother told him to
10 get lost, get the hell out of here when he did show
11 up. And the fight between -- that initially started
12 between him and the victim's brother, and Mr. Cooper
13 produced the knives, the victim in this case.
14 Ms. Jones, interceded and Mr. Cooper stabbed her.
15         I don't think his intent was to kill her,
16 to harm her, but in his drug-induced frenzy of
17 activity, he stabbed her.
18         Now, she, according to the records, has
19 suffered stab wounds to the chest and the hand, and
20 has long term disabilities as a result of that. I
21 don't think that the records reflect that the stab
22 wounds were life threatening. Now, we can argue
23 that.

6

1          I do know that the records reflect that she
2  was not treated for the stab wounds until she could
3  have been detoxed. Apparently she was intoxicated at
4  the time that the stabbing occurred, and they
5  couldn't do the surgery or the treatment for the stab
6  wounds until she had been sufficiently detoxed.
7          None of this mitigates Mr. Cooper's
8  actions, and he has to be punished for that. The
9  only reason I even bring this up is because I think
10 the presentence report is a little sparse on the
11 details of what actually occurred. And I think the
12 Court, in evaluating what happened, needs to have a
13 fuller understanding of what all the surrounding
14 circumstances were.
15         Mr. Bunting, who is the victim's brother
16 and another bystander, pulled Mr. Cooper off the
17 victim, and I think used a cinder block to hit him in
18 the head. And Mr. Cooper was, at least when the
19 police arrived, probably not for half an hour,
20 Mr. Cooper was still unconscious.
21         And the photographs of his intake when he
22 was arrested document the injuries that he suffered,
23 severe bruising -- and I'm not exactly sure what

7

1  medical treatment he received, but at least when he
2  was intaked, the photograph is pretty evident that he
3  was beaten pretty severely.
4          The seriousness of this crime, certainly
5  what he did -- and this could have been a very
6  different case, this could have been a murder case,
7  had not for Mr. Cooper not -- and maybe by fortune I
8  don't think Mr. Cooper went there with the intent to
9  murder Sylvia Jones, but she could easily have died
10 by his actions of producing these knives.
11         So it's a very serious case to begin with.
12         Mr. Cooper, whatever the sentence the Court
13 probably imposes, and it has to impose at least a
14 two-year sentence, might not even live out that two
15 years. We're asking the Court to take into
16 consideration his ill health and the fact that he
17 probably won't even survive the two-year minimum
18 mandatory sentence that the Court has to impose.
19         My understanding is the State's going to be
20 asking for a significant amount of jail time on these
21 charges. And when the Court does fashion the
22 sentence, I ask the Court to take into consideration
23 the points I've just raised. And I think Mr. Cooper

8

1  does want to address the court.
2          THE COURT: Mr. Roberts.
3          MR. ROBERTS: First off, by way of
4  correction, the victim and the defendant are not
5  married. They never --
6          THE COURT: But my understanding is they
7  did live together for 24 years.
8          MR. ROBERTS: They did live together, yes,
9  but they were not married.
10         THE COURT: I know that.
11         MR. ROBERTS: I agree with Mr. Edinger that
12 the evidence is a little sparse, and the evidence
13 that the State would present at trial would be that
14 Mr. Cooper was stalking this victim for some time.
15 There were pending charges in various courts for him
16 harassing her. There was a no contact order, as the
17 Court is aware, at the time of this incident.
18         At 3:00 in the morning, when the victim and
19 her brother were getting in the car, he jumped out of
20 the bushes screaming that he was going to kill her.
21 She was seated in the passenger seat with the door
22 open and he began to repeatedly stab her.
23         The victim spent several days in the

9

1  hospital and underwent, I believe, two surgeries so
2  far --
3          MS. JONES:  Chest and hand surgery.
4          MR. ROBERTS:  -- to repair the damage to
5  her hand, because she was cut almost all the way back
6  to the elbow -- or the wrist from one of the stabs.
7          It very easily could have been a murder
8  case had not Mr. Bunting, her brother, intervened.
9  He exited the driver's side of the car, came around.
10  At that point the defendant threatened him with the
11  knives.  A scuffle ensued, and indeed Mr. Bunting and
12  another passerby knocked the defendant unconscious
13  with the aid of a cinder block.
14          His medical treatment, I can tell you, was
15  that he was looked at by the doctors and released,
16  and immediately turned over to the police, which is a
17  different scenario than that that Ms. Jones went
18  through.
19          The defendant also has in his background,
20  and the State wasn't aware necessarily or we probably
21  would have been filing a habitual petition about the
22  disposition of the offenses in New Haven,
23  Connecticut, where the '76 attempt of assault second,

10

1  a lesser included, and the '72 attempted murder,
2  which pled down to an assault second.  He also has an
3  aggravated menacing here in Delaware in 2000.
4          The State's recommendation is that
5  Mr. Cooper be sentenced to 25 years, suspended after
6  15 years for various levels of probation; that he be
7  required to undergo domestic violence counseling,
8  substance abuse treatment and have no contact with
9  Ms. Jones.
10          THE COURT:  Mr. Cooper, is there anything
11  you want to say?
12          THE DEFENDANT:  Yes, Your Honor.  I -- if
13  it's okay, I've written it down so that I could
14  remember.
15          THE COURT:  I have read the letter that you
16  sent to the presentence office.  I've read the letter
17  that you sent.
18          THE DEFENDANT:  Thank you very much, Your
19  Honor.  This will be very brief.
20          First, sir, I would like the Court to know
21  that I accept the full responsibility for my behavior
22  on 1/29/03.  It was not my conscious intent, and
23  therefore should not have happened.  I am completely

11

1  conscious today of the fact that I had not -- had I
2  not taken the knives from my kitchen, no one would
3  have been injured.
4          Your Honor, I have been cut, shot and
5  knocked to the sidewalk in the area that I live in.
6  Although the Court will not be in agreement, sir, I
7  had the kitchen knives on me for defensive purposes
8  only.
9          I am sincerely remorseful about causing the
10  plaintiff's injury, and I pray that one day she
11  will -- one day will come when the plaintiff will get
12  the courage to be forgiving.
13          Today I stand before this Court in shame,
14  shame because the incident should not have happened.
15  Shame because I've publicly acknowledged that I am
16  not perfect and have submitted to an emotional out of
17  control state, and shame because of my unwarranted
18  behavior that's placed me in the position of begging
19  the Court's mercy.
20          Your Honor, I am sincerely expressing to
21  the Court my feelings of being abandoned, my sense of
22  uslessness, of loss, fear and hopelessness prior to
23  the tragedy of 1/29/03.  However, I have concluded

12

1  that these facts would contribute nothing to my case
2  and would instead reopen hidden wounds.
3          Also, I am certain the plaintiff has
4  experienced more than enough grief because of my
5  actions.  On first observation it may appear that I
6  have wasted a very precious 24 years, which is half
7  my life, being and loving and -- but there it is, a
8  voided venture with the plaintiff, not entiraly true.
9  Like all the ventures in my life, I have been taught
10  a very useful life lesson, one of which is, if I
11  cannot walk as I talk, then I should keep my mouth
12  shut.
13          Know this, Your Honor, from day one with my
14  union with the plaintiff, I've always encouraged her
15  to be the best she could be, as well as be all that
16  she could be.
17          Your Honor, I was supportive of my
18  encouragement to her by studying 1, 2, 3s and A, B,
19  Cs with her until she obtained her GED.  If I could
20  have a second.  The same with the cosmetology and
21  nurse's degree.  I also encouraged her to be
22  independent.  Yet the day she informed me that she
23  wanted to be independent of me, I fell totally apart.

13

1    Your Honor, should you be curious as to why
2  I'm not -- I didn't -- I have not made any
3  disparaging remarks regarding plaintiff, it's because
4  I've been reacquainted with terms of self respect.  I
5  think I would do the respectful thing by not
6  insulting 24 years of my life, the Court and
7  plaintiff by dredging in that relationship looking
8  for instances that might save my neck.
9    One last item, there are several items, in
10  the Court docket, docket from Connecticut as well as
11  from Delaware that if the Court desires, I will
12  explain what the errors are.
13    Thank you very much, Your Honor.
14    MR. EDINGER:  I'd like to give the Court a
15  letter, just from Mr. Cooper's landlord, saying the
16  quality of person he is.
17    THE COURT:  Mr. Cooper, you've committed a
18  serious crime that simply demands a serious penalty.
19    It's the sentence of the Court that you pay
20  the cost of prosecution and be imprisoned for a
21  period of ten years beginning January 29th of this
22  year.
23    That sentence is suspended after you've

14

1  served four years for two years of probation at
2  supervision Level III.  That's on the assault first
3  degree.
4    On the charge of possession of a deadly
5  weapon during the commission of a felony, it's the
6  sentence of the Court that you be incarcerated for a
7  period of four years consecutive to the previous
8  sentence.
9    It's a condition of your sentence that you
10  have no contact with Sylvia Jones or Dwight Bunting,
11  and that you make restitution to the Violent Crimes
12  Compensation Board in the amount of $12,650.57.
13    You're now remanded to the custody of the
14  Department of Corrections.
15    MR. ROBERTS:  Thank you, Your Honor.
16    - - - - -
17
18
19
20
21
22
23

15

STATE OF DELAWARE:

SS:

NEW CASTLE COUNTY:

I, Kenneth T. Brill, Official Court Reporter
of the Superior Court, State of Delaware, do hereby
certify that the foregoing is an accurate transcript
of the testimony adduced and proceedings had, as
reported by me in the Superior Court of the State of
Delaware, in and for New Castle County, in the case
therein stated, as the same remains of record in the
Office of the Prothonotary at Wilmington, Delaware,
and that I am neither of counsel nor kin to any party
or participant in said action nor interested in the
outcome thereof.

WITNESS my hand this 9th day of February,
2004.

                    Kenneth T. Brill
                    Official Court Reporter
                    DCSR Cert #153-PS

*Present letter 2-14-03*



# PUBLIC DEFENDER OF THE STATE OF DELAWARE
### ELBERT N. CARVEL STATE OFFICE BUILDING
### 820 NORTH FRENCH STREET, THIRD FLOOR
### P.O. BOX 8911
### WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

JOHN S. EDINGER
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5137

February 11, 2003

Mr. Anthony A. Cooper
SBI# 00275064
M.P.C.J.F.
P.O. Box 9561
Wilmington, DE  19809

>          RE:  State of Delaware v. Anthony A. Cooper
>               I.D.# 0301018775

Dear Mr. Cooper:

I have been assigned to represent you in connection with the charges filed against you in Superior Court. Your case identification number is listed above.

Typically, the first step in your case is the Arraignment. At the Arraignment, you will formally enter the court system and plead not guilty to the charges. You will be scheduled for a First Case Review several weeks after the date of the Arraignment.

By the date of the First Case Review, I will have received the discovery materials the State is required to produce according to Rule 16. I will have reviewed the Affidavit of Probable Cause and whatever other materials the State has produced in complying with Rule 16. If I have not already done so by the date of the First Case Review, I will meet with you and discuss your case at the courthouse. I will then speak with the prosecuting attorney handling your case. I will attempt to negotiate a plea bargain on your behalf. I will communicate to you the best offer I can get from the lawyer from the State. You will have complete authority to accept or reject the plea bargain offered. If you accept the offer, typically you will be required to enter a plea to some charge. You can either be sentenced right away or at some later

*Exhibit - B-3*

*P4. 34*

time following the preparation of a presentence investigation report.

If you do not enter a plea bargain at the First Case Review, your case will be scheduled for a final case review about six (6) weeks after the First Case Review. At the final Case Review, we will again try to resolve your case be a plea bargain. Again, you will have complete authority to accept or reject the plea bargain offered. If you accept the plea bargain, you will be sentenced right away or at a later time after a presentence investigation report is prepared.

If you reject the plea offer made at Final Case Review, your case will be scheduled for Trial. At present, most cases are being scheduled for Trial about four to six months after the Final Case Review. Unless there are extraordinary circumstances, no more plea bargains will be offered to you. You will be required to go to Trial on all the charges or plead guilty to all charges. The Court does not permit any more plea bargaining after the date of the Final Case Review.

I hope this gives you a general idea of how your case will proceed through the court system. Your individual case may differ in some respects depending on the facts of the case. For instance, we may file legal motions on your behalf which would change the typical schedule.

I will try to schedule an interview with you before the First Case Review. The interview will be either be at Gander Hill Prison or by video. If I cannot schedule an interview before the First Case Review, I will meet with you at the Courthouse and discuss your case in detail with you.

I look forward to meeting with you.

Sincerely,

John S. Edinger, Jr., Esquire
Assistant Public Defender

JSE:mls

p9.35

Copy   Disdain over   letter w co
        treatment           Edingder 6-26-03

Dear Mr. Edinger:

I pray all is well with you. I am alright. please forgive my handwriting. This letter has been prompted as the results of our 6-26-03 interview. permit me to first write what my letter is not. It is not an attempt to Malign or slander you either in the public or private arena It is not to Challenge whether or not you are Competent. It is not intended to Convey any desire that I may or want to defend myself. You said that I had to make a Choice Concerning my Case. Which leaves me just a bit Curious as to why I need Counsel. Sir, on - 6-26-03, your behavior Toward me was such that for a moment I did not know if you were my Counsel or the prosecutor. Surely you did not truly expect that I knew what you looked like in the flesh. In five months I've seen you only once on a fuzzy video. Your Comment regarding attorney Dawn Miello, to say the least was most discouraging as far as the p.d. is Concerned. Speaking of pretrial, you sir, may have only meant to Be informative, But your statement of "20-40 yrs no big deal" deflated most of what little hope that I was holding on to. However sir, I have thanked God for your testy behavior. Your actions has been the impetus for a very interesting reawakening in my spirit. Thank you,

Exhibit - C-1                              Pg. 36

2.

Since the plaintiffs rejection of me after 24 yr. for the kid drug dealer, my emotions have receded to someplace inside of my head, not to be found. or so it was. The psycho-active drugs that I am taking, apparently are working. My thinking is much clearer. For example, your flip pant remark about the state ~~poss~~ possibly trying me under the Habitual offender act, now comes to me not drenched in fear of remaining in prison until death, but rather as a fact, that I can say or do ^Nothing to change the intent of the prosecutor. God did not give me a spirit of fear. He gave me a spirit of discernment, which today allows me to know not to fear the Consequences of truth, but rather sir to be responsible to, my reality. Now sir, please inform the prosecutor that I will be going to trial. My plea will be → guilty but mentally ill. We can start to select the jury after or before the following people are called to substantiate my claim of mental illness. I went to the law library after our, whatever is was on -6 26-03. There I discovered the law. I also discovered this, though I will be given a psychological by the state, test that is, I still will have to demonstrate that my condition existed prior to the offense. I hope you sir, have allowed my preparation time not to elapse. You told me my trial will be in Sept 03.

pg. 37

3. In addition to securing my mental health condition by having these folks in Court, I ask that you secure my medical condition records. Please let them know ( the following persons ) to have in their possession any records of any kind that they retain as a file about me. Be also advised that a copy of this letter will be sent to all who are mentioned at the end of this letter, I am not asking any one to take up my case nor am I requesting that anyone intercede in my litigation. Also as I understand it, in addition to the states psycho evaluation, I may also request a independent assessment, please advise. The following persons will be needed by me. Please have all in Court for trial. The director of health and human services. Delaware. The director of the state welfare dept. Conn. Dr. Phylis James 1612 Ferry rd New Castle De. The director of psychology dept Christiana Hospital Wilmington branch. The director of adult medicine, Christiana hospital, Wilmington branch. Director of the pulmonary dept Christiana hospital Newark branch. Director of pulmonary surgery Temple university hospital. Pennsylvania The director of the psychology dept MPCJF wilm. + smyrna. Mr. Edinger I hope that you will continue as my defense attorney. Though you most likely are not a Johnny or Jerry Spence, you did pass the bar, therefore I hope and think you will do your best. I anticipate seeing you at MPCJF.

pg. 38

# Office of Disciplinary Counsel
SUPREME COURT OF THE STATE OF DELAWARE

200 West Ninth Street
Suite 300-A
Wilmington, Delaware 19801
(302) 577-7042
(302) 577-7048 (FAX)

MARY M. JOHNSTON
Chief Counsel

ANDREA L. ROCANELLI
MICHAEL S. McGINNISS
MARY SUSAN MUCH
Disciplinary Counsel

September 11, 2003

CONFIDENTIAL

Mr. Anthony A. Cooper, Jr. (#275064)
M.P.J.C.F.
P.O. Box 9561
Wilmington, DE 19809

      Re:    ODC File No. C03-9-2
            <u>(John S. Edinger, Jr., Esquire)</u>

Dear Mr. Fryberger:

      The Office of Disciplinary Counsel has received your complaint against John S. Edinger, Jr., Esquire, who has been representing you in your criminal matter.

      This Office cannot intervene in a criminal proceeding for any reason. Furthermore, for your general information, this Office has no authority to vacate a plea or a conviction, reduce a sentence, appoint counsel to represent a defendant or grant any other type of substantive relief. This Office cannot act on your behalf to obtain copies of documents such as plea agreements, police reports, docket sheets and Rule 16 discovery motions. We cannot become involved in the scheduling of a criminal trial. We cannot advise you as to the status of your criminal case. More importantly, this Office does not adjudicate claims of ineffective assistance of counsel.

      Your claim is that your attorney is failing to effectively represent you, in that he has not adequately communicated with you and has not clarified for you certain issues that you believe are relevant to your case. Where a complaint filed with this Office relates to alleged ineffective assistance of counsel, as your complaint does, this Office sends the complaint to the criminal defense attorney for appropriate action. This Office does not conduct a disciplinary evaluation or investigation for complaints such as yours because this Office has no jurisdiction to affect your criminal matter. Pre-trial and postconviction remedies are available to the criminal defendant for that purpose.

-- Ex.--    C-3        Pg 39

Mr. Anthony A. Cooper, Jr.
September 11, 2003
Page Two                                                    <u>CONFIDENTIAL</u>

   Therefore, by copy of this letter with your complaint to Mr. Edinger, as well as to his supervisor, J. Dallas Winslow, Jr., Esquire, I am asking that they promptly evaluate your complaint and take any action they deem appropriate. I also remind Mr. Edinger of his obligations to communicate with his clients pursuant to Rule 1.4 of the Delaware Lawyers' Rules of Professional Conduct. **(However, I am not requesting a written response.)**  Pursuant to the authority of this Office under Rule 9(a) of the Delaware Lawyers' Rules of Disciplinary Procedure, <u>this matter is now closed</u>.

Very truly yours,

Andrea L. Rocanelli

ALR:mrm

cc:    John S. Edinger, Jr., Esquire (w/enc.)
       J. Dallas Winslow, Jr., Esquire (w/enc.)

P9.40

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE

      VS.

ANTHONY A COOPER

Alias: NO ALIASES

DOB: 08/11/1948
SBI: 00275064

CASE NUMBER:                    CRIMINAL ACTION NUMBER:
0301018775                         IN03-02-0138
                                   ASSAULT 1ST(F)
                                   IN03-02-0136
                                   PDWDCF(F)


### SENTENCE ORDER

NOW THIS 21ST DAY OF NOVEMBER, 2003, IT IS THE ORDER OF
THE COURT THAT:

The defendant is adjudged guilty of the offense(s) charged.
The defendant is to pay the costs of prosecution and all
statutory surcharges.


  AS TO IN03-02-0138- : TIS
  ASSAULT 1ST


   The defendant shall pay his/her restitution as follows:
$12650.57 TO VIOLENT CRIMES COMP BOARD


Effective January 29, 2003  the defendant is sentenced
as follows:

 - The defendant is placed in the custody of the Department
of Correction for 10 year(s) at supervision level 5


 - Suspended after serving 4 year(s)  at supervision level 5


 - For 2 year(s)  supervision level 3


  AS TO IN03-02-0136- : TIS
  PDWDCF
**APPROVED ORDER**    1     February 24, 2004 09:02

Exhibit - C-4

SPECIAL CONDITIONS BY ORDER

STATE OF DELAWARE
        VS.
ANTHONY A COOPER
DOB: 08/11/1948
SBI: 00275064

                         CASE NUMBER:
                            0301018775


Have no contact with Sylvia Jones

Have no contact with Dwight Bunting


_____
JUDGE JOHN E BABIARZ JR.


**APPROVED ORDER**    3    February 24, 2004 09:02

pg·43

FINANCIAL SUMMARY

STATE OF DELAWARE
          VS.
ANTHONY A COOPER
DOB: 08/11/1948
SBI: 00275064
                              CASE NUMBER:
                                0301018775


SENTENCE CONTINUED:


TOTAL DRUG DIVERSION FEE ORDERED

TOTAL CIVIL PENALTY ORDERED

TOTAL DRUG REHAB. TREAT. ED. ORDERED

TOTAL EXTRADITION ORDERED

TOTAL FINE AMOUNT ORDERED

FORENSIC FINE ORDERED

RESTITUTION ORDERED                     12650.57

SHERIFF, NCCO ORDERED

SHERIFF, KENT ORDERED

SHERIFF, SUSSEX ORDERED

PUBLIC DEF, FEE ORDERED                    50.00

PROSECUTION FEE ORDERED                   100.00

VICTIM'S COM ORDERED

VIDEOPHONE FEE ORDERED                      2.00

_____

TOTAL                                 12,802.57




**APPROVED ORDER**    4    February 24, 2004 09:02

pg 44

AGGRAVATING-MITIGATING

STATE OF DELAWARE
          VS.
ANTHONY A COOPER
DOB: 08/11/1948
SBI: 00275064

                              CASE NUMBER:
                                0301018775


AGGRAVATING
CUSTODY STATUS AT TIME OF OFFENSE


**APPROVED ORDER**     5     February 24, 2004 09:02

pg-45

Perjury – "To lie. (Where?) " In Court." (What can happen if you lie in court?)
"Nothing if you don't get caught." (And if you are caught?) "There can be a penalty."

Legal Right – "A right according to the law – to have a witness is one."

Sentence – "A determination of a Judge."

Crime – "Something contrary to social rules, policies, and rights."

Jury – "People who make a determination – anyone can sit – 6 to 12 people." (Where?) "Court."

Judge – "He listens to evidence and determines sentences."

When asked what his charges were, Mr. Cooper said, "My primary charge is Assault, First Degree, two charges of Possession of a Deadly Weapon, and Aggravated Menacing." When asked when he was arrested, Mr. Cooper said 01/29/2003 in the morning.

Mr. Cooper was able to provide a description of the events prior to, and after the arrest. His description was provided in a sequential, logical, coherent, and goal-directed manner. He does suggest a period of amnesia during the time of the alleged offense.

Mr. Cooper said he was informed of his charges at "the police department in Wilmington – Downtown." Mr. Cooper was asked if he had had a hearing yet, to which he replied, "I don't know – on the 30th of September. I may have seen the Judge in Gander Hill." (Have you read the charges against you?) "I read one statement. It don't seem like they want me to have it." (Do you think the charges against you are major or minor?) "Major." (Are they felonies or misdemeanors?) "Felonies." (If you were to be found guilty of this charge, what kind of sentence do you think you would get?) "Best guess – Habitual offender – twenty to life – if the prosecutor gets his way. If I plead guilty to Assault First Degree – zero to ten years. (If you were to found guilty, how do you think others will view your crime.) "Don't think anybody is afraid."

(What do you expect your lawyer to do in your case? "The best he can – to get it across to the Judge – it wasn't a conscious event. I was medicating depression." (What do you think the prosecutor will be doing in your case?) "Trying to get me the maximum sentence for the State. He will attempt to prove my guilt."

(Where were you when this alleged offense occurred?) "211 W. 24th St." (Who else was there?) "Victim and according to reports her brother." (Do you remember the day, date, and time of the incident?) "There was a memorial service – after – 1/29/2003."

(Who is your lawyer?) "Edinger. He found the time to talk to me about two months ago. (How easy is it for you to contact your lawyer?) "I have written him about his behavior. It was discouraging, but I asked him to keep the case. I wanted to work with him. I

asked him to subpoena witnesses, if not, I asked the Judge to fire him." (Is your lawyer trying to help you?) "I don't feel he is helping. He demonstrated an attitude that it was just business. It seemed he was disgusted with me." (Do you have confidence that your lawyer will help you? No." When asked again if he could work with his lawyer, Mr. Cooper indicated he would like to work with his lawyer, he just wants to feel his lawyer is fighting for him.

(How can you help your lawyer?) "I told him I don't have money. All I can contribute to this case is honesty. I will tell him the truth." (How can you be defended against the charges?) "I don't know of a defense. It wasn't intended. I want that explained. I want him to tell that I live in a neighborhood where weapons are needed." (Is it easy for you to understand your lawyer's instructions and advice?) "I can't advise a lawyer, but I can communicate with him. If my lawyer has my best interests at heart I can follow through."

(Will it be easy for you to understand the witnesses?) "I can't be sure – if my – I can understand you and I could understand someone else." (Can you pay attention in court?) "I am sure I can pay attention. I can have respectful behavior." (What happens if someone is disrespectful in court?) "The Judge could have a tantrum on him." (If a witness told a lie what would you do?) "I hope I can dispel it. (How?) "By telling the attorney sitting with me."

(Is it important for you to win this case?) "I think there will be consequences." (What is the verdict you expect?) "Guilty" (What happens if you lose?) "I will go to prison, if habitual, I will get many years." (What happens if you win?) "It depends. They could give me probation, if no probation, I would leave the state."

(Are you presently under the care of a doctor?) "Yes. Dr. Joshi." (How do you feel?) "Depressed." (On a scale of 1 to 10; 10 being the worst?) "Eight. Before the antidepressants ten. If I hadn't stopped taking my antidepressants maybe things would be better. I wasn't motivated to get my prescription filled." (How have you felt in jail?) "I have been getting along good. No problems with administration. I am using self-help material on depression everyday. I have two therapy groups and I speak with my therapist." (How is your appetite?) "Appetite hasn't been good for last year and a half. It fluctuates. Sleep can be a problem. I can't stay asleep." (How do you think you will handle being in court?) I guess. I imagine with Wellbutrin I will get some balance." (Can you make simple decisions?) "When I am balanced."

Therefore, it is my opinion that Mr. Cooper is capable of proceeding in this case. Although he entirely happy with the rapport he has established with his lawyer, he still indicates a desire to work with him, if Mr. Cooper feels the lawyer has his best interests in mind. Mr. Cooper is aware of the roles and terminology associated with the court, and he is very aware of the adversarial nature of the proceedings.

pg-12

**ASSESSMENT:**

As for treatment, Mr. Cooper indicates that he has established a strong therapeutic bond with his therapist at Gander Hill and her progress notes suggest that she has been very involved in his treatment. Her interventions appear to be very helpful to Mr. Cooper. This evaluator would not recommend changing his situation at this time, especially since he appears stable and he expresses a great deal of confidence in his treatment by Dr. Joshi and his therapist, Ms. Murcarella. If Mr. Cooper were to destabilize, then his needs should be evaluated at that time.

Crista McDaniel, Psy.D.
Psychologist